Jordan *et al. vs.* Jordan.

---

No. 18.—BENJAMIN S. JORDAN *et al.* plaintiffs in error, *vs.* MARY J. JORDAN, administratrix, defendant.

[1.] Equity causes are not within the provision of the State Constitution, which requires all civil cases to be tried in the County wherein the defendant resides; yet, according to the spirit of our Constitution and laws, and to the usages of our Courts of Chancery, they must be brought in a County where, by reason of the residence of one of the defendants, or on account of the relation of the parties, or on account of some other equity in the cause itself, the Court has jurisdiction.

[2.] As to set-off, the general rule is, that Equity follows the Law; but if there is an intervening equity connecting the demand of the plaintiff at law, with the subject-matter of the set-off, beyond the Statute, then Courts of Chancery will act upon it and grant relief by allowing the set-off.

[3.] The existence of cross demands alone, is not sufficient to justify a set-off in Equity.

[4.] Under our Statute, accounts cannot be set-off against the plaintiff's demand, unless they grow out of connected dealings between the parties.

[5.] Unliquidated claims or damages, are not the subject of set-off at Law, nor in Equity, unless connected with the plaintiff's demand, by some intervening equity.

[6.] A bill is filed to enjoin an action at Law, pending in the County of *Troup*, against the complainant, as administratrix, in favor of one of the defendants, against the plaintiff at Law, and another, both residing in the County of *Baldwin;* alleging a conspiracy and fraud against the complainant's intestate, by reason of which, the defendants acquired a large amount of property and money, belonging to her intestate; alleging an agreement between the defendants, that the claims of each against his estate should be used for the benefit of both, in prosecution of the fraud, and that the action at Law, was brought in pursuance of this agreement; praying a discovery, that the notes of the defendants against the estate and other securities, be decreed satisfied and cancelled, and that they account to the complainant for the property so received, or its value, with rents, issues and profits. *Held*, that this is a bill to set-off the account to be taken against the demand sued on at Law, and not allowable in Equity, and that the Court in *Troup* County, has no jurisdiction in the case, over the defendants, resident in the County of *Baldwin.*

In Equity, in Troup Superior Court. Decided by Judge HILL, May Term, 1852.

Benjamin S. Jordan had sued Mary J. Jordan, administratrix of Warren Jordan, in an action of debt on a note, in the County of Troup. This bill was filed to enjoin said action, and also to compel Benjamin S. Jordan and Farish Carter, to account, as to sundry transactions, in which it was alleged, that they, as confederates, had injured Warren Jordan, when living, and his estate since his death. Both the defendants to the bill, resided in the County of Baldwin, and they both, by demurrer and plea, denied the jurisdiction of the Court.

The demurrer and plea were overruled by the Court, and the defendants excepted.

The further facts necessary to the elucidation of the point, will be found in the opinion of the Court.

McDONALD, for plaintiff in error.

B. H. HILL, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

A suit was instituted in favor of Benjamin S. Jordan, in the County of Troup, upon a note for $4360, made by Warren Jordan in his life, against Mrs. Jordan, his administratrix. This suit was enjoined by this bill. The defendants demurred to the bill, on the ground that they both reside in the County of Baldwin, as appeared from the complainant's admissions, and therefore by the Constitution of Georgia, the Superior Court have no jurisdiction over them in the County of Troup. They, at the same time, plead to the jurisdiction on the same ground. The plea was supported by the answer of both the defendants, in which they explicitly deny the facts charged, which constitute the equity of complainant's bill; that is to say, so far as that equity is made the ground of the jurisdiction in the County of Troup. The presiding Judge overruled both the demurrer and the plea, and that decision is assigned for error. Our judgment is, that the Court had no jurisdiction in the County of Troup, and that both the demurrer and plea ought to have been sustained.

[1.] The Constitution of Georgia requires that all *civil cases* shall be brought in the County of the defendant's residence, and we have determined that this provision does not apply to *Equity cases.* At the same time we have held, that a citizen cannot be called to answer out of the County of his residence, wherever his antagonist may choose to proceed against him, in a Court of Chancery. In *Rice vs. Tarver et al.* we say, " But because Equity causes are not within the limitations of the Constitution, it does not follow that a complainant in Equity has a rambling commission to bring his suit in any County in the State where he may choose to locate it. Nor does it follow that where the suit is properly located, the complainant may draw defendants out of their Counties unnecessarily and universally, to answer in the County where the suit is brought. We hold that the inception of the suit in Equity, must be according to the spirit of our Constitution and laws, and according to the usage of our Courts of Chancery, from the beginning, in some one County where the Court has jurisdiction. By reason of the residence of a defendant, or on

some other account, the Court must have jurisdiction where the litigation is pending." 4 *Geo.* R. 582–3. As the defendants, Benjamin Jordan and Farish Carter, both reside out of the County of Troup, according to the general rule, they cannot be sued there, even in Equity. We are therefore to inquire whether there is any thing in the case made in this bill, which will except them from the operation of this general rule. Upon equitable principles, and according to the usage of our Courts of Chancery, is it possible to sustain this bill? To determine this question, we are driven to the necessity of an analysis of it. We find it necessary first to determine its character, and to ascertain what is the relief sought, and what the grounds of that relief. If, according to the case made, and the law applicable to the case, the complainant, Mrs. Jordan, is entitled to an injunction against the action at Law pending against her, in favor of Benjamin S. Jordan, in the County of Troup, then I suppose that it may be conceded that the Court has jurisdiction there, and not otherwise. The mere pendency of a suit at Law in favor of one of these defendants against the complainant, in Troup County, does not give the jurisdiction. There must be such a connection between the note sued on at Law and the ground of complaint laid in the bill, or such relation between the parties, as will create an equity requiring the injunction, or else Equity will not interfere. And if there is no necessity for the injunction, the jurisdiction cannot be exercised.

The suit at Law was brought in 1851, and the bill was returned to November Term, 1851, of Troup Superior Court. It alleges that the defendants reside in the County of Baldwin; that on the 13th October, 1839, the complainant's intestate, Warren Jordan, executed to the *Geo. R. R. & Banking* Co. a mortgage upon a large number of negroes and a large quantity of land, to secure a note made by him to that Co. After reducing the note, he renewed it for a balance, giving his two notes, one for $15,000, and the other for $600. In 1842, Farish Carter, one of the defendants, procured an assignment to himself of this mortgage. In March, 1842, Carter obtained a judgment against one John Whelchel and Warren Jordan, his security, for $5000,

and also obtained control of a small judgment in favor of S. J. Johnston, against Warren Jordan, as security for Reuben Thornton.  At this time, the bill farther charges, that Benjamin S. Jordan, the other defendant, held a note against Warren Jordan, for $4360.  And at this time, he, Warren Jordan, was much weakened in mind, and his health greatly impaired, so much so that he was unable to attend to business with safety and correctness, and was " much exposed and taken with the confidence he had all along reposed in Benjamin S. Jordan and Farish Carter, and was a fit subject for fraud and imposition ; and which being well known to Benjamin S. Jordan and Farish Carter, they combined and confederated together to injure and defraud him, and conceived and concocted a plan by which they might absorb and secure all of his property, and more especially that part of it embraced in the mortgage to the *Geo. R. R. & Banking Co.*" All the acts and doings of said Benjamin S. and Farish, in consummating this fraud, are charged to have been done in the name of one of them singly ; yet, in every act, sale, suit, levy, purchase, or other thing, whether in the name of the one or the other, or both, they were jointly interested.  It charges a joint interest in the assignment of the mortgage, in the planning of the frauds, and in the spoils ; it charges that they united their debts, and used them jointly or severally, as might best suit their fraudulent purposes ; and it exhibits an agreement entered into, in September, 1842, between themselves and Reuben Thornton, for himself and as agent for Warren Jordan, in which they stipulate to bring the property of Warren Jordan, to sale, and if it does not sell for fair prices, to buy it in, and re-sell it for the benefit of Warren Jordan's family, and to secure the balance to them, after satisfying all their just claims against him ; and that they bought in the property at under-value, and have failed to re-sell it and to secure any thing to Mrs. Jordan and her children, according to their agreement ; and that they have received by such purchases enough to pay all their just claims, and still leave a balance of some seventy-five thousand dollars.  This agreement is charged to have been a pretext, and part and parcel of the grand scheme to absord and secure his estate.  It avers that they used the

mortgage, their notes and securities, in prosecution of this scheme, whenever they were respectively most available; and in relation to the note of $4360, sued on, it uses the following language : " The note held by Benjamin S. Jordan, as aforesaid, although until recently not often on the stage, yet belonged to the *dramatis personæ,* and shared in the profits of every performance." It then proceeds to enumerate fraudulent acts of the defendants. It charges that Carter fraudulently compromised with Whelchel, and released a large portion of his property subject to the judgment against him, and proceeded to sell the property of Warren Jordan, in Hall County, under it ; that this sale was fraudulent, because Carter used every means to prevent competition, giving notice of his mortgage, making false representations, and hollow promises, &c. &c., and that property worth large sums of money was bought in by him at merely nominal prices; that the mortgage was not foreclosed in Hall County, when these sales took place, and when Jordan, owned property named in it sufficient to satisfy it; that it was foreclosed in Florida, and a part of the negroes sold at Marshal's sale, under the mortgage execution, which negroes Carter and Benjamin S. Jordan bought at greatly less than their value, and did not credit the mortgage with the amount of these sales; that they also foreclosed the mortgage on the lands lying in Baker County, and brought them to sale, buying them in at prices greatly below their value, after using the most fraudulent means to prevent creditors and others from bidding, and that none of these sales were credited on the mortgage.    The bill charges that Benjamin S. Jordan, in prosecution of the fraud, has instituted suit on his note, for $4360, in the County of Troup, against the complainant as *administratrix* of Warren Jordan's estate ; that Warren Jordan died intestate, in December, 1843 ; that she has taken out letters of administration on his estate ; that she has not received, in her character as administratrix, from her husband's estate, more than property enough to pay funeral expenses, and to support the family for one year, which has been applied to those purposes, and that she does not know what the estate will be worth until the defendants are made to account.    The prayer of

Jordan *et al. vs.* Jordan.

the bill is, that the mortgage and the notes thereby secured, may be declared fully paid off, and may be delivered up to be cancelled; that the purchases of land and negroes at the Marshal's sale in Florida, and at the Sheriff's sale in Baker County, may be declared fraudulent and void, and all the proceedings connected therewith set aside and annulled, and the bills of sale and deeds be delivered up to be cancelled ; that the possesion of the negroes and lands be given to the complainant, to be administered according to law, and the defendants be decreed to account with and pay to her as administratrix, the hire of the negroes and the rent of the lands ; *or,* that they be decreed to account with and pay to her as *administratrix,* the value of the negroes and their increase, and of the lands, with the rents and hire, and that until the final hearing of the cause, the action at Law be enjoined. Such is the bill in substance.

That it makes a strong case against the defendants, there is no doubt ; but I cannot see that it discloses one single ground of equity which will justify an injunction of the action in Troup. Indeed, I do not see upon what ground the injunction could be put, if there was no question about the jurisdiction. If these defendants resided in Troup, it is by no means clear to me, that a Chancellor, even then could grant the injunction. There really is nothing charged in it, which, upon the well settled Chancery principles, requires the strong arm of a Court of Equity to be laid upon the Court of Law, to wrest from it its already operating jurisdiction. What is the case? It is a case of confederacy and fraud, and for account. The charge of confederacy is distinctly made. The defendants are said to have united their counsels, claims and other means, with a view to perpetrate a stupendous fraud, in wrongfully " absorbing and securing" the entire estate of Warren Jordan. The means by which they effected it are minutely detailed, to wit : The control of the mortgage, the levies, corrupt sales in Hall County, the illegal purchases for nominal prices, the foreclosure of the mortgage in Florida, and the purchase of negroes there at greatly reduced prices ; the foreclosure in Baker County, and the intrigues and devices there to bid in the lands at their own prices ; the agreement with

Jordan *et al. vs.* Jordan.

Jordan, entered into to neutralize his friends, under a show of fairness and a benevolent zeal for Mrs. Jordan and her children ; the failure to execute this agreement, and keeping the mortgage open all the time ; the title to a large amount of property in them, and they for many years in the enjoyment of its rents, issues, and profits. Broad and deep does the complainant lay the foundations for the decree which she asks. What decree ? That all the securities held by them be cancelled ; that their purchases be set aside ; that the property be delivered to her for administration ; and they account for its rents and hire, or, that they pay the value of the property and its increase, with rents and hire ; and in addition, that the suit in Troup be enjoined until the final hearing. It is a very common case in Equity ; it is a bill to develope and set aside a fraud ; to cancel all the actions and doings under it, and compel the parties to disgorge or account. All this is very well ; but how does the complainant get at the defendants in Troup ? Through the suit pending there in favor of one of these defendants against the complainant, is the answer. What then, is the connection subsisting between the note which is the foundation of the action in Troup, and the claim for an account charged in the bill ? This is the prime inquiry. After a most careful reading of the bill, I find mention made of it three times. First, it is charged, that at the time when these defendants confederated, in 1842, Benjamin S. Jordan held a note for $4360, against Warren Jordan, and the amount being the same, it is to be understood that this is the note sued on in Troup. After charging the fraudulent sales in Hall County, the complainant, borrowing a figure from dramatic literature, secondly, speaks of it thus : " The note held by Benjamin S. Jordan, as aforesaid, although until recently not often on the stage, yet belonged to the *dramatis personæ,* and shared in the profits of every performance." And its last appearance is announced in an after averment, that Benjamin S. Jordan, in prosecution of the fraud, brought suit upon it in Troup County. All other connection with the actings and doings of the defendants is matter of inference, and not of specific allegation. Now, although this note is said to belong to the *dramatis personæ,*

in this most iniquitous drama, as it appears to be in the bill, yet it
certainly plays no leading part; it does not star it conspicuously.
It seems to have assigned to it the very humble part of stage light-
er, and is rather an *attache* than a member of the company.    If
I understood correctly the argument of counsel for the com-
plainant in this bill, his position was this :    The bill  charges a
confederacy between  Carter  and  Benjamin S. Jordan, to de-
fraud the estate of W. Jordan, and  the fraud was to be consum-
mated by the use of the  claims  which  they  respectively held
against him, by either or both of them.    This note  was  one of
those claims ; the fraud was perfected, and through it they have
wrongfully acquired property and  money enough to  extinguish
all their claims, this included.  *Therefore,* this note *is paid,* and be-
ing thus paid, Equity will enjoin the action on it, and  decree it
to be delivered up to be cancelled.    And these things being so,
the jurisdiction attaches  in Troup, for the purposes of this de-
cree.    If it be granted that the bill goes for an injunction on the
ground of *payment,* then I don't see how it is possible to sustain it.
When has it been held that the fact of payment, averred in a bill
without more, will arrest a Court of Law in the exercise of a rightful
jurisdiction? Never, I venture to assert, within the annals of Chan-
cery.    It is true that this bill charges the whole routine by which
it is claimed that the payment was brought about, but still it is in
principle the same, with a naked averment of payment; because it
gives no reason for the invocation of the aid of Equity to set up the
payment.    There is nothing averred by which  jurisdiction by in-
junction can attach.    Cases do occur when a  deed  or other in-
strument originally valid has, by subsequent events—such as by
a satisfaction, or payment, or other  extinguishment of it, legal or
equitable—become *functus officio* ; and yet its existence may be
either a cloud on the title of the  other party, or subject him to
the danger of some future litigation, when the facts  are no lon-
ger capable of  complete proof, or have become  involved in the
obscurity of time.    In such  cases, Equity will *prevent* injustice
and decree a delivery and cancellation of the instrument.    *Story
E. Jurisp.,* 705 *and  authorities cited.*  Very different is this case.
The bill does not aver, except inferentially, that  this  note has

been paid, or otherwise extinguished, and it does not aver at all that the complainant is liable to be troubled with future litigation, and that the facts are no longer capable of complete proof, or that they have become involved in the obscurities of time. The suit is pending; the transactions by virtue of which the payment is held to have been made, are recent. It is not even the common case of a discovery to aid a defence at Law, for there is no averment that the plea of payment was made to the note, (the record does not show that there was any such plea,) and there is no averment that the defendant at Law is unable to prove the facts which constitute payment. The bill seeks discovery, it is true, but there is no averment that the complainant is incapable of proving his legal defence. We are not at liberty to divest the Law Courts of their jurisdiction, upon the exhibition alone of a case, which in itself affords ground of Equity cognizance. Equity may have jurisdiction of the case, as the bill makes the case, but if Common Law has jurisdiction, and especially if it is in the exercise of it, notwithstanding, it will not stay the Law Court, unless a sufficient reason be given. And more especially still, will it not do this, when in so doing it is compelled to draw the defendants, as in this case, out of the County of their residence, in the face of a constitutional provision to the contrary. But the bill does not go upon the ground of payment, and the counsel, it is respectfully suggested, misconceived the true construction of it. Here let me remark, that if the bill had been *founded on the agreement,* averring distinctly (before referred to and marked exhibit, &c.) the obligation of Carter and B. S. Jordan to sell property, and from the proceeds of the sale extinguish their claims; and averring such sales, and thereby the extinguishment of *this* note; averring, further, inability to prove the facts at Law, and asking discovery and decree for the performance of the agreement—the case *might* have been differently ruled. As to this, I do not wish to be concluded, nor to conclude the Court. We now rule the case as the record makes it. Counsel, however, repudiated the idea that the bill proceeded on this agreement, and in consequence, counsel for plaintiff in error, in conclusion, declined to discuss it in reference to such an idea.

Jordan *et al. vs.* Jordan.

I think with the counsel for defendant in error. The bill is founded on the confederation and consequent frauds; and the agreement, and defendant's failure to comply with it, are referred to, as part and parcel of the scheme of fraud. Upon the case made, it is quite plain that a Chancellor could not decree on the right of the parties, *according to the agreement,* nor could he grant the injunction. What then, is the legal construction of the bill? I have said that it is a bill founded on confederacy and fraud, and for an account; and I now add that its ultimate aim is to set-off the account which it proposes to be taken against the defendants, against the note upon which one of them to wit: Benjamin S. Jordan has brought suit in Troup County. If it is a case where an equitable set-off is allowable, why then, the injunction was necessary, and the jurisdiction rightfully exercised; because it is clear that the unascertained account set up against the defendants is not within the Statute of set-off. The bill proposes to dispose of the note. It cannot do so, according to its averments, upon the ground of payment. It does not charge the receipt of anything from the complainant, or from Warren Jordan, in his life, or from any person on her or his account, in satisfaction of the note. If it is paid by a *counter-indebtedness* on the part of the defendants, it is this counter-indebtedness which the bill seeks to establish, which is to extinguish the note. Is this, in any legal sense, a payment? and is it not an attempt to discharge the note, by setting against it the indebtedness of the defendants?

[2.] The equity of the Statutes of set-off is this: If there be mutual debts, the balance is alone the sum due. Still, at Common Law, before the English Statutes, there was no such thing as set-off. Mutual indebtedness was settled by cross actions. Before the Statutes, and since the Statutes, proof of the defendant's indebtedness to the plaintiff, a sum greater than his debt, would not sustain a plea of payment. The set-off must be pleaded, and it is not pleadable, unless within the Statute. As the indebtedness of the defendants on account, growing out of their fraudulent appropriation of the property of Warren Jordan, is not pleadable under our Statute, the complainant comes into

Equity, and detailing the transaction, claims an extinguishment of the note and the recovery of the balance. And unless the connection of the suit and this bill can be established upon the ground of an equitable set-off, I see no connection whatever. For the bill does not impugn the plaintiff's title to the note or its consideration, and it charges no fraud in its origin. The claim at Law, is by the concession of the bill, a good, a clear and unassailable claim. Why then, is its collection to be stayed? There is no reason disclosed in the bill, but the single one, and that is, that defendants are indebted to the complainant. I proceed then, to the inquiry, is the alleged indebtedness of the defendants such as can be set against B. S. Jordan's note *in Equity*? The general rule is, that Courts of Equity follow the law, as to set-off. This Court has so held. 1 *Kelly*, 513. 7 *Geo.* 417. A Court of Equity, however, will act upon an *intervening equity*, and allow a set-off in some cases when it cannot be pleaded at Law. I find the doctrine of equitable set-off, fully discussed by two of the ablest Judges of this country, *Kent* and *Story*.

[3.] They agree in the conclusions at which they arrive. Mutual indebtedness alone, in a case not within the Statute, is not sufficient to sustain a set-off in Equity. This is settled by abounding authority. If there is mutual *credit* growing out of a *connected* transaction, it is different; so also if the indebtedness of one is the *foundation* of the *credit* given to the other party, or if, though the debts be distinct, there is an agreement that one shall be set against the other. In *Horn et al. vs. Shepherd*, Judge *Story* sums up the doctrine of equitable set-off thus: "The known rule in Courts of Equity is, that they follow the Law in matters of set-off, unless there is some intervening equity going beyond the Statutes of set-off, which constitutes the general basis of set-off at Law." 2 *Sumn.* 412. In *Green vs. Darling*, where the same learned Judge goes into a careful review of the authorities, he says: "Since the Statutes of set-off of mutual debts and credits, Courts of Equity have generally followed the course adopted in the construction of the Statutes by Courts of Law, and have applied the doctrine to equitable debts. They have rarely, if ever, broken in upon the decisions at Law, unless some other

equity intervened, which justified their granting relief beyond the rules of Law." 5 *Mason,* 212.

In *Duncan vs. Lyon, Chancellor Kent* held, that a Court of Equity followed the same general rules as a Court of Law, as to set-off. 3 *Johns. Ch. R.* 351. In *Rawson vs. Samuel,* Lord *Cottingham* remarks, "We speak familiarly of equitable set-off, as distinguished from the set-off at Law, but it will be found that this equitable set-off exists only in cases where the party seeking the benefit of it, can show some equitable ground for being protected against his adversary's demand. The mere existence of cross-demands is not enough." 1 *Craig & Phillips,* 161, 178, 179.

[4.] And in *The Ruckersville Bank et al. vs. Hemphill,* Judge *Lumpkin,* not unworthy to be associated with names so distinguished, says, "Equity generally follows the Law as to the doctrine of set-off, and if there is a connection between the demands, Equity acts upon it, and allows a set-off under particular circumstances. The mere existence of cross-demands will not be sufficient to justify a set-off in Equity. Indeed a set-off is ordinarily allowed in Equity, *only* when the party seeking the benefit of it, can show some equitable ground for being protected against his adversary's demands, and the mere existence of cross-demands is not sufficient." 7 *Geo.* 413.

[5.] Under these general doctrines, how stands this case? Here are cross-demands; one party holds a note, and the other claims a large sum on account. But where is the intervening equity? The Statute of Georgia does not admit the set-off of unliquidated claims, and without an equity beyond the Statute, a set-off cannot be allowed in Equity. Equity without this, follows the Law.

[6.] The indebtedness of the defendants does not grow out of the indebtedness of the estate of Warren Jordan to B. S. Jordan; these counter-claims are not in any way associated in their origin; one is long anterior to the other. There is no mutuality of credit. Indeed, the debt charged upon the defendants, is *in invitum*; it originated in a fraud against the rights of the complainant. No insolvency is charged upon either Carter or

B. S. Jordan, nor does either reside without the State. Fraud is a ground of Equity jurisdiction, but it has no where been held, that a debt originating in fraud, is on *that account* the subject of set-off in Equity. If the fraud in which the debt sought to be set-off originated, stood connected with the debt against which it is to be set, the rule *might be* different. That is not pretended here. But the grand equitable *ligamen,* according to the learned counsel is, that by confederation these defendants were to use this note, as one of the instruments of the fraud in which the set-off originated, and they did use it, by suing on it. *That* is the part played by the note. Be it so : does that fact constitute an equity? Does it connect the two claims? Does it in the least vary their respective positions under the law of set-off? How can it vary *the law* of set-off, any more than the confederacy and the fraud? To sue on the note was the right of B. S. Jordan, without the confederacy. If he has exercised a right with a view to a wrong, does that vary the legal relations of the parties in reference to the foundation of the right? We think not.

I have said that this claim to an accounting is not pleadable at Law, because not within our Statute of set-off. Accounts which may be set-off by the Statute, are such only as grow out of dealings between the plaintiff and the defendant. *Cobb's N. D.* 487. There are no dealings between the estate of Warren Jordan, or between Warren Jordan in his life, and these defendants, out of which the complainant's claim for an accounting, springs. They are called to account on a fraud. If the claim to account was pleadable at Law, then the complainant would have no standing in Equity, and there would be an end to her case. I say then, farther, that there being no intervening equity—no connection established between the note in process of recovery at Law and the claim set up in the bill—the rule at Law, that *unascertained or unliquidated damages* are not pleadable as a set-off, applies to this case *in Equity.* Such was the ruling of *Chancellor Kent,* in *Duncan vs. Lyon,* 3 *Johns. Ch. R.* 351, before referred to—a case very analogous to this. A bill was filed alleging that there was an agreement entered into between the plaintiff and

Jordan *et al. vs.* Jordan.

defendant, in relation to the sale of timber, by which the plaintiff
was to furnish timber which the defendant was to take to Mon-
treal and Quebec, and pay to the plaintiff one-half the proceeds,
and that the defendant had sued the plaintiff at Law on his
covenants in the agreement; that there had been a verdict for the
plaintiff at Law, and that an order for reference had been taken
on the case.   No report on the reference had been made.   It
prayed an injunction of the suit at Law, and that the defendant
set forth his actings and doings under the agreement; make full
discovery, and account to the plaintiff.   The principal question
made was, whether the account asked could be set against the
claim of the plaintiff in his action at Law.   The Chancellor held
that the matters of account stated in the bill were not the sub-
ject of set-off at Law, and that the same rule applied in Equity.
He dissolved the injunction, holding in reference to the case be-
fore him the following language :   " If the recovery at Law is to
be taken on this present motion, as a just recovery, then it would
be unreasonable to delay the defendant until the account be-
tween the parties can be taken and stated, and the balance struck
in this Court.   One judgment may be set-off against another;
but here is a demand on one side raised to a debt certain, by a
legal assessment, and an uncertain claim on the other, depending
on the settlement of accounts.   Those accounts were not the
subject of set-off, and there is no case to warrant me to stay
execution on the one demand until the other is settled and in a
condition to be set-off."   This case would seem to be a stronger
one than the case at this Bar, in this, that the demands on both
sides grew out of an agreement, and were thus connected.   It will
be noted, however, that there being a judgment for the plaintiff
at Law, although there was a reference upon which no action had
been finally taken, the Chancellor held the plaintiff's claim at
Law as in judgment.   Upon that he refused to grant an injunc-
tion, with a view to set against the suit at Law an unliquidated
account.   Now, in our case there is no judgment, but there is a
clear, undisputed legal demand by contract, and there is no dif-
ference in principle.   Cases to the same effect are not rare in
the books.   I refer to no more, because the question whether an

unascertained account can be allowed as a set-off to a clear legal demand in Equity, has been settled negatively by a solemn judgment of this Court.   I refer to the case of the *Ruckersville Bank et al. vs. Hemphill et al.* 7 *Geo. R.* 396.   A judgment had been recovered by the Bank, against Hemphill, on a  note given by him to it.   Hemphill filed a bill, alleging that  he was a stockholder in the bank, and  had  paid on his stock $1400 ;  that the bank had ceased to do business;  that there were effects belonging to it sufficient to pay all its debts and leave a surplus for division among the stockholders ;  that he had waived his defence at Law on an agreement that  the bank would stay all proceedings until April, 1844, and then come to a settlement with him in reference to his payment of $1400 on his stock, and in reference to unpaid dividends ;  that the  Bank  refused  to comply with this agreement.   It asked an injunction, an opening of the judgment and an account touching the surplus effects and dividends, and that the complainant's share  of the surplus effects, and his unpaid dividends be allowed against the note.   This Court held, among other things, that the object of  the bill was to set-off, by a proceeding in Chancery, the unascertained  account  of the complainant against his note, and  ruled  " that  the mere existence of  cross-demands will not be sufficient to  justify  a set-off in Equity, and that a debtor to a Bank for borrowed money, cannot set-off against his note on a  judgment rendered thereon, the dividend coming to him as a stockholder in the company, when its affairs are wound up ; that as to sets-off, Equity follows the Law, and they are not allowed, ordinarily, unless the party seeking the benefit of them can show some equitable ground for  being protected against his adversaries' demand."

Let the  judgment below be reversed.