### J. H. GRIFFIN v. THE STATE.

No. 5647.   Decided January 21, 1920.

**Operating Automobile—Front Lamp—Invalid Statute.**

The Act of the Thirty-fifth Legislature, chapter 207, section 9, providing, that it shall be unlawful for any person to operate an automobile,

motorcycle or bicycle upon the public highways of this State at night-time, whose front lamp shall project forward a light of such glare and brilliancy as to seriously interfere with the sight of, or temporarily blind the vision of the driver of a vehicle approaching from an opposite direction, is invalid and void on account of its indefiniteness, under article 6, Penal Code. Following: Cogdell v. State, 81 Texas Crim. Rep., 66, 193 S. W. Rep., 675, and other cases.

Appeal from County Court of Tarrant. Tried below before the Hon. Hugh L. SMALL, judge.

Appeal from a conviction of using front lamp of automobile, etc.; penalty, a fine of fifty dollars.

The opinion states the case.

*Baskin, Eastus & Ammerman,* and *David Grimes,* for appellant. —Cited: Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112; Augustine v. State, 41 Texas Crim. Rep., 59, and cases cited in the opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appellant is under conviction for a misdemeanor for violating the following statute: "It shall be unlawful for any person to operate an automobile, motorcycle or bicycle, upon the public highways of this State, at night-time, whose front lamps shall project forward a light of such glare and brilliancy as to seriously interfere with the sight of, or temporarily blind the vision of the driver of a vehicle approaching from an opposite direction." See Acts Thirty-Fifth Legislature, Chap. 207, Sec. 9.

The validity of this statute as creating a criminal offense is assailed, and from the brief of counsel for appellant we take the following quotation:

"Before a law, especially one penal in its nature, can be upheld and enforced, there should be some certain standard by which a person could determine in advance whether or not he is complying with the same. But, under this statute, there is no definite legal standard by which he can be guided, but the statute leaves to the driver of a vehicle approaching from an opposite direction, the determination as to whether his sight is so seriously interfered with or his vision so temporarily blinded as to constitute the person using such lamps guilty of a violation of a law of the State of Texas, for which he should be punished. The determining factor of the guilt or innocence of the accused is to be determined by the effect of the light upon the vision upon each individual driver of a vehicle in the opposite direction, taking no consideration of the fact that it would take a more glaring and brilliant light to temporarily blind or interfere with the vision of one man than it would with another. In fact, it is dependent upon the sight and vision of each individual

who happens to be driving a vehicle, approaching in the opposite direction, and not upon any definite legal standard."

From our investigation of the subject, we are of the opinion that the Act is not sufficiently definite. The law requires a certain degree of definiteness in denouncing acts as criminal. Lewis' Sutherland on Statutory Construction, vol. 1, p. 86. Our statute declares that those penal laws which are of such doubtful construction that they cannot be understood, either from the language in which they are expressed or from some written law of the State, are wholly inoperative. Penal Code, Art. 6. That the act in question comes within this classification we think is illustrated by the decided cases. The recent case of Cogdell v. State 81 Texas Crim. Rep., 66, 193 S. W. Rep., 675, is one in which a statute making it unlawful to expose for sale feedstuff with a label describing it as containing "substantially" a larger percentage of protein, fat, etc., or a smaller quantity of crude fibre, etc., was held bad on account of the indefinite character of the term "substantially."

The case of Cook v. State, 26 Ind. Rep., 278, was one in which a statute was under consideration which declared it unlawful, when the road was in condition to be injured by heavy hauling, to haul a load of more than a certain weight named on a "narrow tired" wagon, or of a certain weight named on a "broad tired" wagon. The statute was held bad, the court using in part the following language:

"There must be some certain standard by which to determine whether an act is a crime or not, otherwise cases in all respect similar tried before different juries might rightfully be decided differently and a person might properly be convicted in one county for hauling over a turnpike in that county, and acquitted in an adjoining county of a charge of hauling the same load on the same wagon over a turnpike in like condition in the latter county, because of the difference of conclusions of different judges and juries based upon their individual views of what should be the standard of comparison of tires, derived from their varying experiences or the opinions of witnesses as to what difference of width of tires would constitute one wagon a narrow tired wagon and another a broad tired wagon."

The appellate courts of the state of Georgia have declared unenforcible as a criminal statute one which made it an offense to operate an automobile "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or safety of any property." Strickland v. Whatley, 142 Ga. Rep., 802, Elsbery v. State, 12 Ga. Rep., 86.

In U. S. v. Capital Traction Company, a statute making it an offense for a street railway company to fail to supply a sufficient number of cars to accommodate all persons desirous of using the

cars "without crowding said cars," but which does not define "crowding," was held too indefinite and uncertain to be enforced, since an indictment therein would not comply with the Constitutional requirement that the accused shall "be informed of the nature and cause of the accusation." 34 Appealed Cases, Dist. Columbia, 592.

Among the cases cited supporting this holding are, Augustine v. State, 41 Texas Crim. Rep., 59, in which the holding was that a statute defining an offense as "murder by mob-violence" was so uncertain as to render it inoperative; State v. Gaston, 45 La. Annual, 636, 12 Southern Rep., 739, in which the statute denounced and punished as a crime on the part of civil officers "any misdemeanor in the execution of their respective offices," and was held void in that it failed to designate or describe the acts embraced within the term "misdemeanor;" Hewitt v. State Board of Examiners, 148 Cal. 590; Third L. R. A., New Series, 896, in which a statute enforcing the forfeiture of a physician's license for publishing an advertisement containing "grossly improbable statements" was held uncertain and void.

Justice Brewer, in the case of Tozer v. U. S., 52 Federal Rep., 919, holding inoperative a statute, expressed himself as follows:

"But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

In the case of Ex parte Jackson, 45 Ark. Rep., 164, the statute was one which declared it a misdemeanor to commit any act "injurious to the public health, or public morals, or to the perversion or obstruction of public justice, or the due administration of the law." Of this the court said:

"We cannot conceive how a crime can, on any sound principle, be defined in so vague a fashion. Criminality depends, under it, upon the moral idiosyncrasis of the individuals who compose the court and jury. The standard of crime would be ever varying, and the courts would constantly be appealed to as the instruments of moral reform, changing with all fluctations of moral sentiment. The law is simply null. The constitution, which forbids *ex post facto* laws, could not tolerate a law which would make an act a crime, or not, according to the moral sentiment which might happen to prevail with the judge and jury after the act had been committed."

We believe the criticism of the appellant, which we have quoted, is a just one. The statute is so framed as to be obnoxious to the rule which requires some degree of certainty in informing one accused of a crime of the nature of the accusation against him, to which he is entitled under Article 1, Sec. 10, of the Constitution. In the statute the glare and brilliancy denounced as criminal, are

such as to "seriously interfere with the sight or temporarily blind the vision of the driver." What degree of interference is serious is a matter not fixed by the Legislature; the glare and brilliancy are not described by any standard that is certain, that may be known in advance by the citizen; nor is there by the Legislature any rule fixed for deciding at what point they reach the prohibited degree of brilliancy. Whether the act be criminal or lawful is made to depend largely upon the peculiarities that may affect the vision of the driver of the approaching vehicle.

That the statute is commendable in purpose, that it strikes at an annoying evil, is not to be questioned; but its terms are so vague that we are constrained to hold that under the principles obtaining in the framing of criminal statutes, it is inoperative and unenforcible as denouncing a crime. It is therefore ordered that the judgment be reversed, and the prosecution dismissed.

*Dismissed.*