**S. H. KRESS & CO. v. LINDLEY et al.**

**No. 2619.**

Court of Civil Appeals of Texas. El Paso.

Jan. 14, 1932.

Stewart & De Lange, Albert J. De Lange, Andrews, Streetman, Logue & Mobley, and Robert F. Campbell, all of Houston, for plaintiff in error.

Lewis Wood, Kenneth Krahl, and Lewis Fisher, all of Houston, for defendants in error.

HIGGINS, J.

This is a suit by Mrs. Lindley and her husband to recover damages for alleged slander, assault, and false imprisonment.

Briefly stated, the evidence in behalf of the plaintiffs is to the following effect:

At about 1:30 p. m. on October 22, 1928, Mrs. Lindley, accompanied by a Mrs. Parks, entered the Kress & Company store in Houston. Mrs. Lindley there purchased a paper shopping bag, which she delivered to Mrs. Parks. They then went to several of the counters in the store. Their conduct aroused the suspicion of Mrs. Johnson, an employee of the defendant. She communicated with Mr. Harlan, a floorwalker, and Miss Lee, a sales lady of the defendant. These employees

**380**

kept the pair under observation, and it was discovered that Mrs. Parks was stealing articles from the counters and dropping them in the bag. According to the testimony of defendant's witnesses, Mrs. Lindley was seen to take a paint brush from one of the counters, pass it to Mrs. Parks, who slipped it in the bag. With reference to what then happened Mrs. Lindley testified:

"As I was standing at the gum counter opening my purse to buy a package of gum the floorwalker came up and caught me by the arm and gave me a hard jerk and says 'Wait a minute, you are not getting out of this building.' And he says, 'Are you with this woman in the brown dress?' The woman in the brown dress was then back at the incense counter about fifteen feet from where I was standing. * * * That man said to me 'Wait a minute, you are not getting out of this building. Are you with this woman in the brown dress?' I said yes, and he jerked me back and forth a time or two and he says 'You have stolen as much of this stuff as she has.' I asked him what his idea was in jerking me like that, and he says, 'That is all right, you have stolen as much of this stuff as she has.' He was jerking me around very rough and I asked him to turn me loose. By that time this sales girl had brought Mrs. Parks up to where we were standing. This sales girl said 'Watch her, she has stolen as much as she has.' Then Mrs. Parks spoke to me and said, 'Mrs. Lindley, can I borrow fifty cents from you?' I told her yes, and I opened my purse and started to hand Mrs. Parks the fifty cents and this floor-walker grabbed me by the arm and jerked me very roughly, and I caught hold of the counter to keep from falling, and I lost my fifty cents. When the floor-walker jerked me he said 'You are not going to give her that fifty cents. You are going along with her, you have stolen as much as she has.' Mrs. Parks spoke up and says 'Please don't jerk her like that, she knows nothing about what I have put in this bag.' After Mrs. Parks made that remark Mr. Harlan said I was going right along with her 'you have stolen as much as she has.' At that time the sales girl stepped up and said 'She has stolen as much as she has.' That gentleman, Mr. Harlan, was talking in a loud and angry tone of voice. There was lots of people in the store at that time besides the floorwalker, the sales girl, Mrs. Parks and I at that time. Those people were scattered around over the store until the floor-walker began to jerk me like that, and when he began to jerk me and I was pulling and trying to get loose, not knowing what had happened a crowd of people gathered around to see what was taking place. * * *

"When the floorwalker said 'You are not going to give her the fifty cents, you are going right along with her, you have stolen as much as she has,' the salesgirl spoke up and

asked him where to take them, and the floorwalker said to take them up stairs. They brought Mrs. Parks over to where I was standing, and the salesgirl caught me by the arm and says 'You are going right along, you have stolen as much as she has;' and she caught me by the arm until we got to the foot of the stairs and we started up stairs."

The witness then details the treatment to which she was subjected in the room upstairs to which she was taken.

Briefly stated, it was to the effect that she was unwillingly detained there four or five hours, refused access to a telephone, accused of theft, threatened with being "slammed in jail" if she did not confess that she was a party to the theft of certain stolen articles found in the bag carried by Mrs. Parks. After she and Mrs. Parks had been in the room a short time, the house detective was called by Harlan. Suffice it to say that according to Mrs. Lindley's version she was subjected to "third degree" tactics for several hours by Harlan and the house detective in an effort to extort from her a confession of theft.

Her testimony is fully corroborated by Mrs. Parks, who assumed sole responsibility for the theft of the articles found in the bag carried by her. Her testimony completely exonerated Mrs. Lindley from any connection with the theft.

All issues submitted were found in defendants in error's favor. Actual and exemplary damages were assessed in the sums of $10,000 and $2,500, respectively, and judgment therefor rendered.

■ Mr. Kenneth Krahl, one of plaintiff's attorneys, in the opening argument to the jury stated: "There is nothing in the world that a floorwalker likes to do better than catch a thief; that is their business; that is what they are there for; that is what they like to do; the day's business is not complete unless they catch somebody stealing. You gentlemen have seen floorwalkers; they are suspicious of everybody that comes into the store, your wife, my wife and everybody else's. That is the natural manner of a floor-walker."

This argument is not justified by anything in the record. It was improper, inflammatory, and calculated to arouse the indignation of the jury. With reference thereto, what was said by Chief Justice Fly in Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 656, 658, a slander case, is applicable. Judge Fly said:

"The argument of counsel for appellee was of the most inflammatory nature and calculated to arouse the most intense passion and indignation of the jury towards appellant. Much of it is not based upon the facts disclosed in the statement of facts, and is abusive of appellant and of a man who was

not a witness in the case, and was abused because he did not testify. Such phillippics may be permissible in partisan politics, or in the denunciation of disloyalty and treason from the rostrum, but can find no excuse for existence before the alters of justice, where sober judgment and calm consideration of facts should guide and direct the actions of judge and jury.

"No such acrimonious invective should be countenanced in a court of justice and equity."

Because of the intemperate argument, the case was reversed though no objection thereto had been made at the time of the argument.

In the present case counsel for appellant did object and the court sustained the objection and ordered the argument stricken. But this could not undo the evil effect of such vituperative and inflammatory argument and will not relieve it of being regarded as reversible in its nature. Davis v. Hill (Tex. Com. App.) 298 S. W. 526; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Truehart v. Parker (Tex. Civ. App.) 257 S. W. 640; City of Austin v. Gress (Tex. Civ. App.) 156 S. W. 535; Floyd v. Fidelity U. C. Co. (Tex. Com. App.) 24 S.W.(2d) 365.

Miss Hazel Lee was one of the employees of defendant assigned by Mrs. Johnson to watch Mrs. Lindley and Mrs. Parks. Miss Lee testified she saw Mrs. Lindley pick up the paint brush and slip it in the bag carried by Mrs. Parks. When Mrs. Lindley and Mrs. Parks were taken to the room on the upper floor, Miss Lee went along. Miss Lee subsequently left the employment of defendant and became an employee of the Dollar Store in Houston.

By bill of exception it is shown that:

"During the direct examination of plaintiff, Mrs. J. T. Lindley, as a witness in her own behalf, she was asked by her counsel, in substance, 'I ask you this: Did you in any one of the stores you have been in since this (referring to the incident in Kress' store) occurred, see any one who was present on the day this happened in Kress' store,' and, 'did anything out of the ordinary happen when you visited the Dollar store at any time or on any occasion since the 22nd day of October, 1928', and the further question, 'can you tell the jury what happened that day (in the Dollar Store), did you see any of the employees of Kress who were there at the time this happened in their store,' to which questions and the answers to be adduced therefrom (it appearing that the plaintiff expected to testify with reference to alleged statements of Hazel Lee while the latter was employed by the Dollar Store), defendant then and there in open court objected and excepted, as such evidence was immaterial and irrelevant and was with reference to subsequent matters between other persons and was hearsay, as said Miss Hazel Lee was then no longer in the employ of, nor shown to be in the employ of the defendant at the time of such alleged statements. All of which objections being overruled by the Court, defendant then and there duly excepted, and said plaintiff testified that on one occasion when she was in the Dollar Store subsequent to October 22, 1928, an incident occurred which was out of the ordinary, and on that occasion she saw the salesgirl who had brought Mrs. Parks up to where she was standing in Kress' store, over there in the Dollar Store; that said girl's name, as she subsequently learned, is Hazel Lee, and that on said occasion in the Dollar Store Hazel Lee said to one of the salesgirls, 'there is that woman they jerked up for stealing in Kress' store,' and that Hazel Lee also walked up and talked to a man in the store and that plaintiff then went on and bought some articles with the man watching her, as more particularly appears from Statement of Facts, page 22; to which evidence defendant then and there in open court duly objected and excepted on the grounds hereinbefore set forth. and asked that same be stricken out, which motion was by the Court overruled, to which defendant then and there in open court duly excepted.

"And be it further remembered, that at the time of the incident in the Dollar Store, the evidence in the case shows that said Hazel Lee was not employed by the defendant herein but had left the employ of the defendant several months prior to such incident, and the evidence in the case shows that the said Hazel Lee on October 22, 1928, had been in the employ of the defendant, S. H. Kress & Company, and on that date had observed the actions of plaintiff, Mrs. Lindley, and her companion, Mrs. Parks, and her knowledge of the details of the transaction in the Kress store on October 22, 1928, were gained by said Miss Hazel Lee's personal observation and not on account of statements made by other persons, and plaintiff's testimony being to the effect that Miss Lee herself made some of the statements on October 22, 1928, complained of by plaintiff and made the basis of plaintiff's suit."

The weight of authority is to the effect that one is not liable in damages for the unauthorized repetition of a slander by a third person. But other authorities take the contrary view when the repetition is of matter slanderous per se and such repetition is the natural or probable consequence of the original publication. See cases cited in note 16 A. L. R. 737. It has been so held in this state in Southwestern T. & T. Co. v. Long (Tex. Civ. App.) 183 S. W. 421, and the companion Wilkins Case (Tex. Civ. App.) 183 S. W. 429, and in our opinion the rule of the minority is correct. By this rule appellees undertake

to justify the admission of the testimony shown by the foregoing bill, but such rule has no application.

■ The statement made by Miss Lee in the Dollar Store was based upon her personal observation and participation in the original incident in defendant's store and cannot properly be regarded as a mere repetition of a slander originally uttered by another. The evidence was improperly received, and the error in its admission accentuated by the fact that it was commented upon by counsel for the plaintiff in argument to the jury to which argument exception was taken, the court requested to instruct the jury not to consider such argument, and the request refused.

■ Over objection a number of witnesses were permitted to testify to the good reputation of Mrs. Lindley for truth and veracity. This evidence was inadmissible, no attack having been made upon such reputation. Jones-O'Neal Fur. Co. v. Jones (Tex. Civ. App.) 269 S. W. 180; Shell Pipe Line Co. v. Coston (Tex. Civ. App.) 35 S.W.(2d) 1056.

■ Those assignments are also sustained which attack the award of exemplary damages. The wrongs inflicted upon Mrs. Lindley were committed by subordinate employees of the defendant, and not by any officer or controlling agent representing it in its corporate affairs. There is no evidence that defendant authorized or subsequently ratified the malicious acts of the offending employees and hence no basis for allowing exemplary damages. Citation of authority to this effect is unnecessary.

It is asserted the award of actual damages of $10,000 is excessive. Since the case will be remanded because of the errors noted above, this matter need not be passed upon. The same is true of the complaint that the court should have granted a retrial because of newly discovered evidence.

The numerous other assignments, we think, present no error and call for no discussion.

Reversed and remanded.