**Linda Yvonne HOFFERT and Linda Darnelle Jones, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 67307, 67308.**

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 28, 1981.

Gary J. Cohen, Austin, for appellant.

Edward J. Walsh, Dist. Atty., and Edgar A. Nooning, III, Asst. Dist. Atty., Georgetown, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

These appeals are taken from convictions for the offense of delivery of methamphetamine to a police officer, James Wolsch, on May 22, 1979. Both appellants elected to enter pleas of guilty before a jury and have the jury jointly assess punishment. Consequently, on December 10, 1979 after a trial was held on the single issue of punishment, the jury rejected applications for probation and each appellant was assessed punishment at five years confinement.

In their first ground of error appellants contend that the trial court erred in permitting, over timely objection, the introduction of evidence of extraneous offenses. The extraneous offenses complained of occurred during the testimony of Officer Wolsch when he testified as follows:

"Q. Were the Defendants, Linda Jones and Linda Hoffert, doing anything unusual when you came into the house?

A: Yes.

MR. COHEN: Your Honor, just for the purpose of protecting the record, I would like to reflect that we object to the officer's testimony at this point for the grounds that were previously stated in the hearing before the Court.

THE COURT: All right. That objection is overruled.

Q: What were the Defendants doing unusual?

A: Smoking marijuana.

Q: Officer, was anybody else in that house at that time?

A: There were quite a few small children.

Q: How old were these children?

A: Two to three years.

\* \* \* \* \* \*

Q: How many?

A: There were quite a few. She stated that she kept children. I would say there were six or so.

Q: She stated to you that she kept children?

A: Yes.

Q: Was this marijuana being smoked in their presence?

A: Yes.

Q: Officer Wolsch, did you purchase anything from these Defendants at that time?

A: Yes, I did.

Q: And what was that?

A: I purchased one gram of methamphetamine, or speed.

Q: Who told you it was one gram?

A: Ms. Hoffert."

In addition to his testimony that appellants were smoking marijuana in front of small children, Officer Wolsch also testified as follows:

A: Yes. I told them that I would be interested in purchasing some larger amounts of methamphetamine if they would be able to get it, and she stated yes, that the person they were getting it from always had plenty, and that she didn't know the price right offhand of a quarter ounce or an ounce, but that she would check on it, that I could get back with her later and find out the prices and find out how much it would be and how much they could get.

Q: You referred to 'she.' Which Defendant?

A: Linda Hoffert.

\* \* \* \* \* \*

Q: At the time of this transaction was there any conversation as to marijuana?

A: Yes.

Q: What was the substance of that conversation?

A: Okay. Mrs. Hoffert stated that she did not have more of the Sinsemilla marijuana but that they had some low-grade Colombian and some commercial marijuana that they had access to pounds of and that she had picked up some of it and she had some lids over there."

The trial judge ruled the evidence admissible, and stated:

"THE COURT: Well, just on the punishment phase, though, the jury has to determine what the punishment is, and that's what I would be concerned with, all of the facts and circumstances surrounding the alleged offense, that they would be entitled to have that information presented to them in determining what punishment should be imposed.

\* \* \* \* \* \*

THE COURT: Well, if all of this took place at the same time that the alleged offenses which are charged in the Indictment occurred, I feel that whatever took place there at that time is admissible in evidence."

1. Vernon's Rev.Civ.Stat.Ann. Art. 4476–15, § 4.03(a).

What the officer saw as well as the conversations about obtaining additional controlled substances all occurred contemporaneously with the instant offense. It is well settled that where an offense is one continuous transaction, or another offense is part of the case on trial or closely interwoven or blended with the case on trial, proof of all facts relating to the transaction or other offense is proper as part of circumstances attending the offense. *Jones v. State*, 505 S.W.2d 909 (Tex.Cr.App.1974); *Johnson v. State*, 510 S.W.2d 944 (Tex.Cr.App.1974). Such an extraneous transaction is admissible to show the context in which the instant offense occurred under the reasoning that events do not occur in a vacuum and the jury has a right to hear what events immediately surrounded the criminal act charged so that they may realistically evaluate the evidence. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

Moreover, the alleged offer to sell additional methamphetamine and marijuana would have constituted an offense under § 4.03(a) of the Controlled Substances Act.[1] In *Rios v. State*, 557 S.W.2d 87, 92 (Tex.Cr.App.1977) the Court considered a similar situation in which the defendant allegedly made an offer to sell heroin to a police officer during the commission of the offense for which he was charged, and the Court wrote:

"The alleged offer to sell, if indeed it was an offer to sell, would have constituted an offense under Sec. 4.03(a) of the Controlled Substances Act. We need not decide whether appellant committed an extraneous offense on March 24, 1974, as the appellant's activity is res gestae of the offense. *Spencer v. State*, 466 S.W.2d 749 (Tex.Cr.App.1971); *Jones v. State*, 505 S.W.2d 909 (Tex.Cr.App.1974)."

Appellants also argue that res gestae is not applicable when, as here, there is a plea of guilty entered, because guilt is not a material issue in dispute. It is true, as we wrote in *Murphy v. State*, 587 S.W.2d 718,

722 (Tex.Cr.App.1979), that extraneous transactions may only become admissible upon a showing by the prosecution both that the extraneous offense is relevant to a material issue in the case, and the relevancy outweighs its inflammatory or prejudical potential.

 However, appellants' argument must fail. At the outset we are met with the decision in *York v. State*, 566 S.W.2d 936, 938 (Tex.Cr.App.1978) where the Court wrote:

"A plea of guilty to a felony charge before a jury admits the existence of all facts necessary to establish guilt; the introduction of testimony by the State is to enable the jury to intelligently exercise the discretion which the law vests in them to assess the penalty. *Brown v. State*, 487 S.W.2d 86 (Tex.Cr.App.1972); *Alexander v. State*, 479 S.W.2d 44 (Tex. Cr.App.1972). The State's right to introduce evidence is not restricted by the entry of a plea of guilty by the defendant, or by his admission of facts sought to be proved; relevant facts admissible under a plea of not guilty are also admissible under a plea of guilty. *Morgan v. State*, 557 S.W.2d 512 (Tex.Cr.App.1977); *Asay v. State*, 456 S.W.2d 903 (Tex.Cr. App.1970)."

The material issue during the punishment phase is, obviously, what punishment to assess; this Court has held that the circumstances surrounding the instant offense are therefore material in order for the jury to intelligently perform this function. *Rios v. State*, supra. In this sense, therefore, the circumstances surrounding appellants' arrest are also relevant as to a material issue. As the Court most recently wrote in *Archer v. State*, 607 S.W.2d 539 (Tex.Cr.App.1980) when the defendant was tried for unlawful possession of a firearm by a felon, and the arresting officer testified that he found one hundred and fifty pills and capsules in his coat pocket:

"Such an extraneous offense is admissible to show the context in which the criminal act occurred; this has been termed the 'res gestae,' under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence."

Thus we are constrained to hold that these extraneous offenses were admissible to show the circumstances or context of the instant offense, and since a guilty plea does not restrict the State's right to introduce evidence during the punishment phase, the trial court did not err. Appellants' first ground of error is overruled.

 The Court has also consistently held that it is not necessary to give a limiting instruction on an extraneous offense which is admitted as part of a transaction which includes the offense on trial. *Archer v. State*, supra, at 542, *Luck v. State*, 588 S.W.2d 371, 376 (Tex.Cr.App.1979), *King v. State*, 553 S.W.2d 105 (Tex.Cr.App.1977). Having previously concluded that the evidence concerning the smoking of marijuana, as well as the offers to sell additional marijuana and methamphetamine were properly admitted to demonstrate the context of the instant offense, we find that the trial court did not err in failing to give the requested limiting instruction as to these extraneous transactions. Appellants' fifth ground of error is overruled.

By their second ground of error appellants assert that the trial court erred in admitting, over timely objection, the unqualified reputation testimony of two police officers. Sergeant Beck of the Austin Police Department and Lieutenant Swofford of the Round Rock Police Department both testified that they knew appellants and knew that their general reputation in the community was bad. Appellants argue that Sergeant Beck's testimony should not have been admitted because on cross examination outside the presence of the jury he stated that he had only spoken with other police officers regarding appellant Jones' reputation, and that he was not certain where appellant Jones resided within Travis County. No complaint is made regarding his reputation testimony about appellant

Hoffert. In front of the jury during cross examination the following testimony was elicited:

"Q: Okay, sir. Now, as to Ms. Linda Jones, you said that she lives in Travis County. Do you know where?

A: No, sir, I really don't.

Q: Travis County is a pretty large county, isn't it?

A: Yes, sir.

Q: And you haven't talked to any, like, civilians, people that might be friends or neighbors of hers or who live in the same area of the county that she lives in; right?

A: No, sir."

■ We note that the record is silent as to whether this witness' information was based solely upon a discussion of the instant offense, or upon other information Sergeant Beck may have received. *Clark v. State*, 500 S.W.2d 469, 472 (Tex.Cr.App. 1973). In *Mitchell v. State*, 524 S.W.2d 510, 512 (Tex.Cr.App.1975) the Court was presented with a similar situation and wrote:

"In the case at bar, it appears that Chief Waits, although basing his knowledge of appellant's bad reputation on his 'rap sheet' as well as the facts of the offense for which he was on trial, never discussed appellant's reputation with anyone else. ... We have concluded however, that the error in permitting the witness to testify was harmless. Wait's testimony was extremely terse, without embellishment."

Here Sergeant Beck clearly stated that he had discussed appellant's reputation with other police officers. In *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App.1980) the State called as a reputation witness a woman who stated that she had not talked to anyone, and this was likewise held by the Court to

be harmless error. In *Henry v. State*, 567 S.W.2d 7, 9 (Tex.Cr.App.1978) a police officer was held qualified to testify when his knowledge of appellant's reputation was based on his "personal investigation and information received from police officers in Port Arthur." It also appears that, although a witness may not testify that an accused's reputation is bad if he has never heard anyone make adverse comments about it, it is not necessary that the witness be able to name specific persons who have made such comments. *Lopez v. State*, 574 S.W.2d 563 (Tex.Cr.App.1978).

■ Sergeant Beck's testimony was also terse and without embellishment, *Mitchell v. State*, supra, and coupled with the fact that he did discuss appellant's reputation with other police officers, we are constrained to hold that the trial court did not err in admitting his reputation testimony.

Insofar as Sergeant Beck's inability to state exactly where in Travis County appellant Jones resided, in *Arocha v. State*, 495 S.W.2d 957 (Tex.Cr.App.1973) the Court held that a person's community is not limited to the locale where the case is tried, nor his residence at the date the offense was committed. See also *Stephens v. State*, 522 S.W.2d 924, 927 (Tex.Cr.App.1975).

■ The foregoing discussion is also dispositive of the question raised as to Lieutenant Swofford's reputation testimony. Appellants assert that his testimony should not have been admitted because he expressed his personal opinion, rather than the community opinion. This assertion, however, is contrary to what is contained in the record before us. Lieutenant Swofford stated that he had talked with both police officers and civilians in the community about appellants' reputation.[2] There is no

---

2. Out of the presence of the jury the following testimony was elicited by appellants:

"Q: (By Mr. Cohen) Officer Swofford, you discussed Ms. Hoffert's reputation with APD and other law enforcement; right?

A: Yes, sir.

Q: All right. And among law enforcement officers, reputation, I assume is bad?

A: Yes, sir.

Q: Now, if you will tell me what you have heard people in the community say about her with reference to her reputation.

A: Sir, the information that I received was referenced to activity of her keeping young children in her residence and that marijuana and other narcotics were being suspected by the people in the neighborhood and that they

showing that the witness had no knowledge other than the facts of the instant case or that he had not spoken with members of the community. *Braxton v. State*, 528 S.W.2d 844, 847 (Tex.Cr.App.1975). Appellants' second ground of error is overruled.

■ In their third ground of error, appellants contend that the trial court erred in allowing reputation testimony before reputation was placed in issue by appellants. As the State correctly notes, Article 37.07, § 3(a) provides:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to . . . his general reputation and his character."

At the punishment phase of a trial the reputation of an appellant is an issue. *Hunter v. State*, 530 S.W.2d 573 (Tex.Cr. App.1975), and *Nelson v. State*, 505 S.W.2d 271 (Tex.Cr.App.1974). The State is entitled to introduce such evidence. Appellants' third ground of error is overruled.

■ In their ground of error number four appellants assert that the trial court erred in permitting the State to impeach appellants' character witnesses with "have you heard" questions which implied the existence of other acts of misconduct. Our examination of the record shows that appellants introduced eleven witnesses, ten of whom were directly asked by appellants whether they were familiar with appellants' reputation for being peaceable and law abiding citizens. Ironically the eleventh witness was not asked about appellants' reputation and the prosecutor did not conduct any cross examination. It is well settled that the reputation of a defendant cannot be inquired into by the State through cross examination of his witnesses, unless the accused opens the way,[3] and evidence of appellant's character does not subject the witness to impeachment with "have you heard" questions. *Brown v. State*, 605 S.W.2d 572, 574 (Tex.Cr.App.1980). However, that is not the situation presented here. Here appellants first asked their own witness about appellants' reputation, then in cross examining these reputation witnesses the State is permitted to ask such a witness if he has heard of a specific act of misconduct. *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972). The purpose of such questions is to test the credibility of the witness' testimony concerning the accused's reputation. Since reputation is based on hearsay, the State may properly inquire whether he has heard hearsay inconsistent with his opinion. *Moffett v. State*, 555 S.W.2d 437 (Tex.Cr.App.1977). Appellants first inquired into their own reputation, the State may thereafter invoke this rule for testing their witness' credibility by asking the "have you heard" ques-

---

questioned and demanded that we, at least, look into it.

Q: Have you heard those people in the community say that they think that Linda Hoffert's reputation is no good, or is that an opinion you are forming based on what you have heard them talk about with reference to the marijuana and stuff?

A: That's based on what information I received.

Q: So that's your opinion of what you've heard them talk about?

A: Yes."

Lieutenant Swofford was attempting to negotiate the legal corridor between the opinion of appellants' reputation he gained from the community, and the form of the question, asking him whether the same information formed the basis of his own personal opinion, when he gave the answer, "That's based on what information I received." We note that reputation testimony is based on hearsay and that it is to be based upon discussions of an accused's bad reputation so long as these discussions include matter other than the crime for which he is on trial. *Mitchell v. State*, supra, at 513.

3. In an effort to clarify the rules we hasten to add that during the punishment phase the State is entitled to bring in its own witnesses and may inquire of them as to a defendant's reputation. This is so because it is an issue during punishment. However, even during the punishment phase, the State is not permitted to impeach the witnesses of a defendant with prior acts of misconduct, i. e., "have you heard" questions, *unless* and until a defendant inquires of his own witness about his presumably good reputation. This then permits the State to impeach this witness' credibility by asking "have you heard" questions concerned with prior acts of misconduct. *Brown v. State*, supra. See also Texas Practice, Law of Evidence, Ray § 1492, 1980.

tions. *Pemberton v. State*, 601 S.W.2d 333, 337 (Tex.Cr.App.1980) (Opinion on rehearing).

Moreover, after examining the form of the "have you heard" questions asked by this prosecutor, we cannot say that they were improper.[4] In *Moffett v. State*, supra, at 439, the Court examined a similarly worded question that included both the date of the alleged act of misconduct, as well as about the same amount of detailed information, and found no error. Compare this with the case of *Sisson v. State*, 561 S.W.2d 197 (Tex.Cr.App.1978) wherein the prosecutor asked the "have you heard" question which injected an assertion of fact by the use of the words "did in fact." This had the undeniable effect of asserting the matter as fact. We do not find such an assertion of fact contained in the "have you heard" questions propounded here. Appellants' fourth and final ground of error is also overruled.

Accordingly, the judgments of the trial court are affirmed.

---

4. The "have you heard" questions propounded by the prosecutor were as follows:

"Have you heard that on June 15, 1979, Linda Jones was arrested for delivering 200 pounds of marijuana to James Wolsch?"

"Have you heard that on May 20, 1979, Linda Hoffert sold a quantity of marijuana to James Wolsch?"

"Have you heard that on May 29, 1979, Linda Hoffert sold methamphetamine to James Wolsch?"

"Have you heard that on June 22, 1979, Linda Hoffert smoked marijuana in front of a baby?"