Diane **WILKERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 684–86.

Court of Criminal Appeals of Texas,
En Banc.

July 1, 1987.

George Trimber, Richard Alley, Fort Worth, for appellant.

Tim Curry, Dist.Atty. and C. Chris Marshall, Delonia A. Watson, Charles Brandenberg & Richard Roper, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was indicted in a two count indictment for possession of phenmetrazine of more than 400 grams and possession of hydromorphone of less than 28 grams. The controlled substances were alleged to have been possessed on or about September 23, 1983.

After the State waived the second count of the indictment, the appellant entered a plea of guilty before a jury to the first count, possession of phenmetrazine of more than 400 grams. See Article 4476–15, § 4.042, V.T.C.S. The jury assessed punishment at 11 years' imprisonment.

On appeal in a sole point of error appellant urged that the "trial court erred in allowing prejudicial *testimony regarding value and use of pills* which was irrelevant to a plea of guilty to possession of a controlled substance as a result of which appellant was denied a fair trial on the punishment." (Emphasis supplied.)

Under this point of error appellant calls attention only to Officer Ansley's testimony "regarding the price of phenmetrazine (preludin) and hydromorphone (dilaudid) as being irrelevant and prejudicial to the issue of possesion of phenmetrazine." In argument under said point of error passing reference only is made as to testimony as

to "use." This portion of the contention was not briefed.[1]

Rejecting appellant's contention, a divided Court of Appeals affirmed the conviction. *Wilkerson v. State,* 707 S.W.2d 756 (Tex.App.-Ft. Worth 1986).

In his petition for discretionary review, appellant's sole ground of review stated:

"The majority of the Court of Appeals erred in finding no reversible error from the trial court having admitted *testimony* offered by the State *as to the value and effects of hydromorphone.* At the punishment phase of the prosecution for possession of phenmetrazine where punishment was the sole punishment issue before the jury."

We granted appellant's petition to determine the correctness of the Court of Appeals' decision to affirm the judgment of conviction.

At the outset we observe after further examination that appellant not only narrowed the contention urged before the Court of Appeals, but shifted his complaint about the admission of testimony concerning the "value and *use of pills*" to "value and *effects of hydromorphone.*"

The record shows that on September 23, 1983, Estella Sanchez, a pre-board screener for American Airlines at Dallas-Ft. Worth Airport, spotted a large number of "pills" in the duffel bag belonging to appellant. Sanchez called Department of Public Safety Officer Frank Guerra who examined the "pills" in the bag in which he also found $1,429.00 in cash. Appellant was arrested. Other officers, including DPS Officer Deel, testified as to the chain of custody of the "pills." There were stipulations that the pills were 1,560 tablets of phenmetrazine and 285 tablets of hydromorphone, and the amount of phenmetrazine was 883.5 grams.

Officer Larry Ansley, a narcotics agent with the Ft. Worth Police Department, testified as to his education and training in the field of narcotics. He related that phenmetrazine was also known as preludin and "speed." He testified the value of both the phenmetrazine and the hydromorphone found in appellant's duffel bag would be $37,775.00. He further testified how such drugs were normally used, the number of tablets utilized in a "fix," the method of preparation and that the drugs were usually injected into the veins. In another part of his testimony he was asked and related the effects of phenmetrazine upon a human, but he did *not* testify as to the effects of hydromorphone.

Dr. Angela Coretta Springfield, Chief Toxicologist with the Tarrant County Medical Examiner's office, testified as to the effects of both phenmetrazine and hydromorphone on the human body.

Appellant recalled Officer Guerra, who testified the money found in a side pocket of the duffel bag was counted in the appellant's presence, but not the pills. Appellant's sister testified appellant had a good reputation for being a peaceful and law-abiding citizen. Appellant, 34, testified she had never been convicted of a felony; that she did not use drugs nor know anything about them. She related she and her three children lived with her father in Lubbock and she took care of him and paid his bills, etc. She testified that she had been employed at the Pizza Inn in Lubbock and there had met a woman customer named Shirley whose last name and her address were unknown. She stated Shirley offered her $500.00 to go to Ft. Worth and bring back some diet pills, that she would be paid upon her return to Lubbock and be reimbursed for the round trip airline ticket. Appellant testified she wanted the "quick money" and upon arriving at the airport she went by taxi to the Greentree Motel where according to instructions she sat at a table and an unknown blonde-haired woman (who had been described to her) came and picked up her duffel bag and took it to the restroom, and then returned the bag. Appellant then went to the waiting taxi and returned to the Dallas-Ft. Worth airport where she was stopped while going through a security check. She admitted she lied when she told the officers she had

---

1. The Court of Appeals noted that "the Appellant cited no authority in its brief relative to the alleged inadmissibility of testimony concerning the use of drugs...."

a prescription for the pills. She claimed that $700.00 of the money in her bag was hers or her father's and was in the bag when the blonde woman took the bag, and she didn't know the origin of the balance of the funds found. On cross-examination appellant stated she thought the motel was the Greentree, but it could have been the Doubletree Motel. She denied she had called the Doubletree Motel after the arrest because she didn't know anyone there. Later it was shown that she was permitted a phone call after her arrest and her first call was to Room 209 at the Doubletree Motel.

■■■ A plea of guilty to a felony offense before a jury, Article 26.14, V.A.C.C.P., is a unitary trial, not a bifurcated one. *Frame v. State*, 615 S.W.2d 766 (Tex.Cr.App.1981); *Arismendez v. State*, 595 S.W.2d 535 (Tex.Cr.App.1981). A plea of guilty to a felony before a jury admits the existence of all incriminating facts necessary to establish guilt. *Darden v. State*, 430 S.W.2d 494 (Tex.Cr.App.1968), and cases there cited; *Reyna v. State*, 434 S.W.2d 362 (Tex.Cr.App.1968); *Alexander v. State*, 479 S.W.2d 44 (Tex.Cr.App.1972); *Brown v. State*, 487 S.W.2d 86 (Tex.Cr.App.1972); *Brinson v. State*, 570 S.W.2d 937 (Tex.Cr.App.1978). And where such guilty plea is before the jury the presumption of innocence does not obtain under the plea and there is no issue of justification under it. Article 26.14, supra, *Darden v. State*, supra; *Reyna v. State*, supra.

■■■ Introduction of evidence by the State in a felony case involving a plea of guilty before the jury is to enable the jury to intelligently exercise the discretion which the law vests in them touching the penalty to be assessed. *Darden v. State*, supra; *York v. State*, 566 S.W.2d 936 (Tex. Cr.App.1978). Thus the issue before the jury on the guilty plea in a felony case is that of punishment. *West v. State*, 480 S.W.2d 640 (Tex.Cr.App.1972). It should be noted, however, that the State's right to introduce evidence is not restricted by the entry of a plea of guilty, or by his admission of facts sought to be proved; relevant facts admissible under a plea of not guilty

are also admissible under a plea of guilty. *Hoffert v. State*, 623 S.W.2d 141 (Tex.Cr. App.1981); *York v. State*, supra; *Brookens v. State*, 438 S.W.2d 577 (Tex.Cr.App. 1969). See also *Morgan v. State*, 557 S.W.2d 512, 513 (Tex.Cr.App.1977); *Asay v. State*, 456 S.W.2d 903 (Tex.Cr.App.1970); *Beard v. State*, 171 S.W.2d 869 (Tex.Cr. App.1943). Cf. *Fairfield v. State*, 610 S.W.2d 771 (Tex.Cr.App.1981). An application for probation does not limit the State's right to offer evidence. "Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." *Allaben v. State*, 418 S.W.2d 517, 519 (Tex.Cr. App.1967). See also Article 37.07, § 3(a), V.A.C.C.P., as to evidence as to the prior criminal record of the defendant, his general reputation and his character.

■■■ An accused, of course, is entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally. *Young v. State*, 261 S.W.2d 836 (Tex.Cr.App.1953); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App. 1972), and cases there cited. See also *Templin v. State*, 711 S.W.2d 30, 32 (Tex. Cr.App.1986); *Rubio v. State*, 607 S.W.2d 498, 499 (Tex.Cr.App.1980). In some cases circumstances exist which justify the admission of an extraneous offense as an exception to the general rule. Some of these exceptions are noted in *Albrecht*, supra, and discussed. The general standard or test for the admission of an extraneous offense is whether the prosecution can show (1) that the offense or transaction is relevant to a material issue in the case, and (2) that the probative value of the evidence to the trier of fact outweighs its prejudicial or inflammatory nature. *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985); *Williams v. State*, 662 S.W.2d 344 (Tex.Cr. App.1983); *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979); *Templin*, supra, at 33.

■■■ One of the recognized exceptions to the general rule in Texas is that evidence of an "extraneous" or "extrinsic" offense may be admissible to show the context in

which the criminal act occurred. *Albrecht, supra,* at 101. See *Williams v. State,* 662 S.W.2d 344, 345–346 (Tex.Cr.App.1983); *Woolls v. State,* 665 S.W.2d 455 (Tex.Cr.App.1983).[2]

In *Taylor v. State,* 420 S.W.2d 601, 605 (Tex.Cr.App.1967), it was stated:

"It is well settled that '[w]here the offense is one continuous transaction or another offense is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper. 4 Branch's Ann.P.C.2d, Sec. 2255, p. 618. See also 23 Tex.Jur.2d, Sec. 196, p. 302; *Cook v. State,* Tex.Cr.App., 398 S.W.2d 284; *Fuller v. State,* Tex.Cr.App., 380 S.W.2d 619."

See also *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985); *Mitchell v. State,* 650 S.W.2d 801 (Tex.Cr.App.1983), cert. den. 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221; *Euziere v. State,* 648 S.W.2d 700 (Tex.Cr.App.1983); *Washington v. State,* 496 S.W.2d 77 (Tex.Cr.App.1973); *Joshlin v. State,* 488 S.W.2d 773 (Tex.Cr.App.1972).

In *Archer v. State,* 607 S.W.2d 539 (Tex.Cr.App.1981), it was stated:

"Such an extraneous offense is admissible to show the context in which the criminal act occurred; this has been termed 'res gestae,' under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence." See also *Rios v. State,* 557 S.W.2d 87 (Tex.Cr.App.1977).

In *Archer, supra,* the defendant was tried for unlawful possession of a firearm by a felon and the arresting officer found one hundred and fifty pills and capsules in the defendant's coat pocket.

"[E]vidence of the context of the offense is almost always admissible under the reasoning that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated. See *Maddox v. State,* 682 S.W.2d 563 (Tex.Cr.App.1985) (Clinton, J., concurring); and *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App.1967). *Rarely will the prejudicial value render inadmissible any evidence that is [in] context of the offense."* *Mann v. State,* 718 S.W.2d 741, 743–744 (Tex.Cr.App.1986). (Emphasis supplied.)

In *Mann,* the Court wrote:

"The rape and murder of Hoppe was part of the entire episode or transaction that led to the murder of Bates [as charged]. As such, the testimony is part of the context of the offense."

In *Lomas v. State,* 707 S.W.2d 566, 568 (Tex.Cr.App.1986), it was pointed out that while a defendant should not be punished for a collateral crime or for being a criminal generally, that under the doctrine of "res gestae" the prosecution is entitled to elicit testimony on the facts and circumstances surrounding the commission of the offense and may then ask the jury to consider how these facts and circumstances serve as aggravating or mitigating factors in determining the severity of the punishment to be assessed for the offense charged.[3] See also *Dunlap v. State,* 462 S.W.2d 591 (Tex.Cr.App.1971); *Williams v. State,* 535 S.W.2d 637, 640 (Tex.Cr.App.1976).

In *Fisher v. State,* 493 S.W.2d 841, 843 (Tex.Cr.App.1973), the defendant was

---

**2.** Some federal cases hold that where the evidence complained of is inextricably intertwined with evidence used to prove the crime charged such evidence is not "extrinsic" within the rule proscribing admission of evidence of extrinsic acts. See Federal Rules of Evidence, Rule 404(b); *United States v. Sepulveda,* 710 F.2d 188 (5th Cir.1983); *United States v. Simpson,* 709 F.2d 903 (5th Cir.1983).

**3.** The prosecutor must avoid, however, an argument to the jury that encourages the jury to try,

convict or punish a defendant additionally for collateral crimes that have become apparent through introduction of the facts and circumstances immediately surrounding the offense charged. *Lomas, supra,* at 569, citing *Klueppel v. State,* 505 S.W.2d 572 (Tex.Cr.App.1974); *Brown v. State,* 530 S.W.2d 118 (Tex.Cr.App.1975). See also *Walls v. State,* 548 S.W.2d 38 (Tex.Cr.App.1977). We do not, in the instant case, have a jury argument contention.

charged with possession of marihuana. LSD pills were found on appellant's person in the same container as the marihuana. There it was held that the LSD "pills constituted part of the transaction" charged and that the pills and the result of the chemical analysis of the pills were admissible in evidence.[4]

*Hoffert v. State,* 623 S.W.2d 141 (Tex.Cr. App.1981), involved a plea of guilty before a jury to the delivery of methamphetamines. There is was held in an opinion for the Court by Judge Clinton that evidence of the smoking of marihuana as well as the offers to sell additional marihuana and methamphetamine were properly admitted to demonstrate the context of the instant offense. As noted in *Hoffert,* "the jury has a right to hear what events immediately surrounded the criminal act charged so that they may realistically evaluate the evidence." Hoffert's application for probation was rejected by the jury.

And *Hoffert* made clear that it is not necessary to give a limiting instruction on an extraneous offense which is admitted as a part of a transaction which includes the offense on trial. See also *Archer v. State,* 607 S.W.2d 539, 549 (Tex.Cr.App.1980); *Luck v. State,* 588 S.W.2d 371, 376 (Tex.Cr. App.1979); *King v. State,* 553 S.W.2d 105 (Tex.Cr.App.1977).

*Williams v. State,* 535 S.W.2d 637 (Tex. Cr.App.1976), involved a plea of guilty to possession of marihuana before a jury where an application for probation had been filed. It was held that the facts and circumstances surrounding the offense charged and the arrest at the airport including the possession of $28,000 in cash, a pistol, etc., were relevant and admissible on the issues of punishment and probation.

"If an understanding of the event in question, or if a description of the immediate circumstances reveals other crimes than those charged, exclusion will lead to a highly artificial situation at trial making understandable testimony unlikely."

2 J. Weinstein and M. Berger, Weinstein's Evidence, § 404[10], at 404–77.

■■■ In the instant case testimony as to the finding of the hydromorphone pills or tablets in the same duffel bag as the phenmetrazine tablets was admissible even if there had been a timely objection. Here, of course, there was no objection at all, and in addition the appellant stipulated with the State the pills were both phenmetrazine and hydromorphone in various stated amounts. Thus as background for our discussion we are not dealing with the improper admission of an extraneous offense.

On direct appeal to the Court of Appeals appellant complained of the admission of testimony by Officer Ansley as to the "Value and use of the pills" (both phenmetrazine and hydromorphone).

Terming the "value" contention as appellant's primary contention the court rejected the same on the basis that appellant was the first to elicit the testimony later complained of and was in no position to urge error on appeal.

The record reflects that on cross-examination of Officer Deel appellant first broached the subject of the value of the phenmetrazine. Deel disclaimed any knowledge of the street value. Later on cross-examination of DPS Officer William Glenn appellant elicited the following:

"Q Do you have any idea what the street value of those pills [both kinds] are?

"A Approximately.

"Q Can you tell the jury approximately what that value is?

"A Would be approximately. $40,000 worth of pills.

"Q $40,000.

"A Yes, sir."

After Ft. Worth Police Officer Larry Ansley testified as to his background, education, training, etc., he was asked as to the street value of preludin (phenmetrazine) and appellant objected on the grounds

---

**4.** In *Franklin v. State,* 494 S.W.2d 825, 827 (Tex. Cr.App.1973), where the charge was possession of marihuana, it was held that "Red Birds," illegal sleeping pills, found in the search of the defendant's apartment where the marihuana was found were admissible as "res gestae" "whether alleged in the indictment or not."

of "relevancy" to the charge against her. After a hearing outside the jury's presence appellant objected to testimony as to "values of the individual pills" as such would be prejudicial since she was charged with possession of phenmetrazine, not delivery. The State responded it was entitled to show amount, value and "use" even if the charge was "possession." Appellant's reurged "prejudicial" objection was overruled. Ansley then testified before the jury that the value of phenmetrazine tablets were $23,400 and the value of all the pills (including hydromorphone) found was $37,775, a figure less than that earlier elicited by appellant.

It is well established that when the defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, he may not complain on appeal. See *Maynard v. State*, 685 S.W.2d 60, 65 (Tex.Cr.App.1985); *Adams v. State*, 685 S.W.2d 661, 669 (Tex.Cr.App.1985); *Withers v. State*, 642 S.W.2d 486, 487 (Tex.Cr. App.1982); *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Cr.App.1981); *Dossey v. State*, 165 Tex.Cr.R. 652, 310 S.W.2d 321, 324 (1958). Since appellant elicited the value of the pills or tablets found, she is in no position to complain.

Further in *Kemner v. State*, 589 S.W.2d 403, 406 (Tex.Cr.App.1979), and *Castro v. State*, 432 S.W.2d 948 (Tex.Cr.App.1968), both possession of marihuana cases, it was held not to be error to admit evidence as to the value of the narcotics.

The Court of Appeals correctly disposed of the "value" contention.

As to her complaint on direct appeal as to the "use of the pills" testimony, it is observed that the appellant cited no authority in argument under her sole point of error, made only passing reference to testimony of "how the drugs were used" and that she was charged with possession "and not use and delivery." The Court of Appeals referred to the contention as constituting "the vague second prong of her complaint on appeal." No specific position of the record or objection to the "use" testimony was pointed out in the appellate brief. We do find that Officer Ansley related "how to use" phenmetrazine and hydromorphone. He related that both were normally injected by use of a syringe, how many tablets were generally used for a "fix" of each substance and the normal method of preparation of each substance.

In partial response to appellant's contention the Court of Appeals wrote:

"It has been frequently held that the State may show how many doses a given amount of drugs will supply or how many cigarettes a given amount of marihuana will produce. Such evidence merely allows the State to translate the testimony into terms which are understandable by the jury. See *Enrique v. State*, 501 S.W.2d 117, 120 (Tex.Crim.App.1973); and *Kemner*, 589 S.W.2d at 404; see also *Martinez v. State*, 407 S.W.2d 504, 505 (Tex.Crim.App.1966) and *Acosta v. State*, 403 S.W.2d 434, 438 (Tex.Crim.App.1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1352, 18 L.Ed.2d 449 (1967)." See also *Castro v. State*, supra; *Basaldua v. State*, 481 S.W.2d 851 (Tex.Cr.App.1972).

The Ft. Worth Court of Appeals in the instant case went further and discussed *Measeles v. State*, 664 S.W.2d 364 (Tex. App.–Austin 1983) (pet. ref'd), which was not cited by the appellant or the State. The Court of Appeals mistakenly noted that the holding in *Measeles* concerned admission of testimony as to the *use* of a controlled substance when in fact the testimony dealt with the *effect* of a controlled substance upon a human body. *Wilkerson*, supra, at 758. This mischaracterization has caused some confusion. *Measeles* involved a delivery of methamphetamine prosecution. There, Dr. Coons, a psychiatrist, testified in *Measeles* as to the "long-term effects of methamphetamine." He related, inter alia, that such abuse could cause an individual to become "hyper, irritable, hypervigilant, sometimes progressing into short-tempered paranoid." The sole contention on appeal in *Measeles* was that the trial court "erred in allowing the State, at the hearing on punishment, to present an expert witness who testified as to the *effect* of methamphetamine on the

human mind and body." (Emphasis supplied.)

The Austin Court of Appeals in *Measeles* concluded "after much difficulty" that evidence of the *effect* of methamphetamine on the human mind and body was not relevant to the assessment of appellant's punishment and its admission was error. The Court relied heavily upon *Martinez v. State*, 138 Tex.Cr.R. 51, 134 S.W.2d 276 (Tex.Cr.App.1939). *Martinez*, a possession of marihuana case, was primarily reversed because of the failure to delete, after objection, reference in the defendant's confession that he had twice previously been in the penitentiary as a result of burglary convictions. The Court noted it needed only consider these contentions in disposing of the case. In passing, however, the Court observed that it saw "no reason for admitting ... testimony" of officers as to the effect upon persons who use marihuana as the *"effect* of marihuana was not an issue." No authorities were cited. No reasoning was utilized and no analysis advanced in this 1939 case.

Although cited in *Franklin v. State*, 494 S.W.2d 825 (Tex.Cr.App.1973), the "holding" in *Martinez*, supra, has been seriously eroded, *Guajardo v. State*, 378 S.W.2d 853 (Tex.Cr.App. 1964), if not overruled sub silentio.

In *Guajardo*, a possession of heroin prosecution, complaint was made that the chemist had been permitted to testify that a dosage of all of the powder in one of the heroin packets would be dangerous to a human. The Court could not agree that *Martinez* was violated by permitting such testimony over objection.

In *Magee v. State*, 504 S.W.2d 849 (Tex. Cr.App.1974), a sale of heroin prosecution, it was not reversible error for a chemist to testify that an injection into a human of 0.22 grams of 80% pure heroin "purchased" from the defendant would be fatal to a human. *Beal v. State*, 432 S.W.2d 94 (Tex. Cr.App.1968), involved a prosecution for unlawful possession of a barbiturate under Article 726d, V.A.P.C. (1925). There it was held that a chemist's testimony as to the hypnotic effect of a barbiturate upon hu-

man beings was admissible to prove that barbiturates are hypnotic drugs within the meaning of the statute. And in *McGaskey v. State*, 451 S.W.2d 486 (Tex.Cr.App.1970), a possession of marihuana prosecution, it was held that no reversible error was shown in permitting a chemist to testify that use of marihuana was habit forming, acts as a central nervous system depressant, and causes a total obliteration of a person's inhibitions and at the same time causes certain types of hallucinations which result in rather bizarre activity. In *McGaskey* the overruled objection was that the defendant was charged with possession of marihuana "and not with the effect it has on the human body."

And in *Bright v. State*, 556 S.W.2d 317 (Tex.Cr.App.1977), a possession of heroin prosecution, a chemist was permitted to testify as to the physical effects of heroin on the human body. Holding that the chemist was a qualified witness, this Court stated that "the trial court was justified in considering that his opinion might aid the jury in an understanding of the subject." *Bright*, supra, at 321.

Although not discussing the above cases undermining *Martinez*, supra (134 S.W.2d 276), the Court of Appeals in the instant case disagreed with the holding in *Measeles*, and overruled appellant's contention both as to "value and use of pills," concluding that "the jury should not be required to work within a vacuum, but should be allowed to consider all evidence relative to the gravity of the offense, which is not otherwise inadmissible."

As earlier noted, appellant has now switched the second prong of his contention from "use of pills" on direct appeal to *"effects* of hydromorphine (sic)" in his ground of review. Thus, we need not discuss the new second prong of the contention. *Padgett v. State*, 717 S.W.2d 55, n. 2 (Tex.Cr.App.1986); cf. *McCambridge v. State*, 712 S.W.2d 499, 501–502, n. 9 (Tex. Cr.App.1986). Further, the second prong of the ground of review is almost as vague as the second prong of the point of error on direct appeal. There was testimony as to "use" and "how to use" and other distinct

testimony as to "effects." Appellant, however, does not point out the specific testimony of which he now complains on review. Although certainly not required to do so, we have searched the record and find that only Dr. Springfield, the toxicologist, was asked and testified about the effects of hydromorphone upon a person who ingests or injects it.[5] She testified that hydromorphone (also known as dilaudid) had "an analgesic effect and is a quieting of anxieties and fears, there's a euphoric effect, a lethargy, people don't care about what's going on; decreased sense of pain...."; that it was used for medicinal purposes such as post surgery situations, in cough syrups, and that it was an addictive substance. There was no objection to Dr. Springfield's above described testimony. Nothing was thus preserved for review. *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976).

Even if it can be argued that appellant has only narrowed the contention presented to the Court of Appeals, and that some trial objection was applicable to Dr. Springfield's testimony as to the effects of hydromorphone, we still do not perceive reversible error.

While most of the cases discussed deal with testimony as to the use or the effect of the drug, narcotic or controlled substance named in the indictment, appellant's contention involves an uncharged offense admissible as part of the "res gestae" or transaction. Although not well formulated or briefed, the question apparently sought to be presented is when evidence of an offense (unnamed in the indictment) is admissible into evidence because it is inextricably intertwined with evidence used to prove the offense charged, or is part of the res gestae, then just how much evidence of that related crime becomes admissible to make comprehensible the evidence relating to the offense charged. Where to draw the line may not be determined without some difficulty. Each case will have to be determined on its own merits, and it must be decided whether the probative value of the evidence to the trier of fact outweighs its prejudicial or inflammatory nature. See *Plante v. State,* 692 S.W.2d 487 (Tex.Cr. App.1985). In *Franklin v. State,* 494 S.W.2d 825, 827 (Tex.Cr.App.1973), a possession of marihuana prosecution, it was held that evidence as to "Red Birds" sleeping pills were admissible as part of the res gestae, but evidence as to the long term effect of these pills was a collateral matter and not an issue to be solved by the jury. The general objection there was held not to be sufficient to preserve error. The Court did not consider that such admission "was of sufficient importance in the case to require a reversal."

In the instant case the phenmetrazine and the hydromorphone were found together in appellant's duffel bag. Both were shown to be controlled substances. The hydromorphone was admissible as "res gestae," and in fact there was no objection on this basis. Given the fact that it is common knowledge that most controlled substances have some effect upon human beings when taken, the brevity and nature of the only testimony as to the effects of hydromorphone, and the lack of an objection or sufficient objection to this testimony, and considering all the other facts and circumstances of the case, we do not conclude that reversible error is presented.[6]

---

5. Officer Ansley testified about the effects of phenmetrazine, but not about the effects of hydromorphone upon a human being.

6. In argument to the jury the State argued that appellant had not come "clean" with the jury and was not deserving of probation. The argument was made that her own story from the witness stand was unbelievable. It was pointed out that while appellant may never have been convicted of a felony and may have been a "mule" in the transportation of drugs as her counsel claimed, there was a large amount of drugs involved and she claimed she didn't know Shirley's last name or address and couldn't identify the woman at the motel; that she told the officers and later the jury the pills were obtained at the Greentree Motel when it appears it could have been the Doubletree Motel; that she denied her first phone call after arrest was to the Doubletree Motel upon which fact she was impeached; that she lied to the officers at the airport when she told them she had a prescription for all of the pills in the bag and when she claimed the clothing in the bag belonged to her children, etc.

The judgment of the Court of Appeals is affirmed.

CLINTON, TEAGUE, and DUNCAN, JJ., concur.