**John Phillip BLACKWELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–90–001–CR.**

Court of Appeals of Texas, Waco.

Oct. 9, 1991.

Rehearing Denied Oct. 30, 1991.

W.V. Dunnam, Jr., Dunnam & Dunnam, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Tanya S. Dohoney, Lyle V. Gripp, Asst. Dist. Atty., Waco, for appellee.

Before THOMAS, C.J., and VANCE and CUMMINGS, JJ.

## OPINION

THOMAS, Chief Justice.

A jury assessed Appellant a life sentence for aggravated assault on a peace officer. We overrule all points relating to the guilt-innocence phase. However, we reverse the judgment and remand the cause for a new punishment hearing because the court admitted evidence of unadjudicated acts of misconduct at the punishment hearing.

Officer Wallace stopped Renee Traylor's car for a traffic violation. Appellant got out of the automobile and talked to Wallace. When Wallace asked him about an unexecuted arrest warrant, Appellant returned to the vehicle and told Traylor, his common-law wife, to drive away. While fleeing and attempting to evade police, Appellant fired a shotgun out the window of Traylor's car at a police vehicle. When police finally stopped the car at a roadblock, Appellant fired shots at Officers LaRue and Koen. Traylor, who then attempted to turn the car around, crashed into police vehicles. Officer Whitt sustained injuries in the collision. Appellant was finally captured despite resisting arrest.

Appellant called Traylor as a witness in his behalf. He argues that the prosecutor's questions to Traylor were improper. In points two, three, four, and five, he contends the court erred when it refused to instruct the jury to disregard the questions and denied his motions for a mistrial. Specifically, he complains about the following:

Q  Well, have you found out anything about [Appellant] since April of 1989 that you don't like?

[APPELLANT'S ATTORNEY]: Ask the Court please, we object to attempting to show some extraneous matter. Does she know of anything she doesn't like about this man. If the Court please, we move the Court for a mistrial for even compelling me to [object] to such obviously improper matter. Is there anything she doesn't like about the man. And we move the Court to declare a mistrial over this deliberate question.

THE COURT: Overruled. Go ahead.

[APPELLANT'S ATTORNEY]: We object to it and move the Court to instruct the jury—strike it and instruct the jury not to consider his question, and we object to the question whether she's found out anything she doesn't like about this man as being an overall attempt to show—

.    .    .    .    .

Q  You left T.D.C. because they didn't want you associating with him; isn't that right?

A  Look on the records.

[APPELLANT'S ATTORNEY]: Just a moment. We now move the Court to declare a mistrial upon the grounds that attempting to inject the character of [Appellant] in this case, and also infer extraneous matters prejudicial to [Appellant]. And we move the Court to declare a mistrial.

THE COURT: I overrule the motion.

[APPELLANT'S ATTORNEY]: Subject to that we object to it on the grounds—move the Court to instruct—to strike the question and any answer, and instruct the jury not to consider the question for any purpose upon the grounds that it is an attempt to and in fact an injection of the character of [Appellant], and prejudicial to the rights of [Appellant].

THE COURT: All right. I overrule the objection. Go ahead.

.    .    .    .    .

Q  Miss Traylor, you know that your own father wants you to stay away from [Appellant], don't you?

[APPELLANT'S ATTORNEY]: At this time we again move for a mistrial upon the grounds that he is attempting to inject the character of [Appellant] deliberately, and it's so prejudicial it can never be cured. And we move the Court to declare a mistrial.

THE COURT: I sustain the objection. I instruct the jury they will disregard the

last statement of counsel for the State for any purpose whatsoever. I overrule the motion for a mistrial at this time.

. . . . . .

Q  He's dangerous, isn't he?

A  He was not fighting them.

[APPELLANT'S ATTORNEY]: Now, just a moment. We now move the Court for a mistrial upon the grounds that calls for a conclusion, that is a deliberate attempt to him attack the character of [Appellant] with a conclusion which is so prejudicial to [Appellant] that there is no way he can receive a fair trial.

THE COURT: All right.

[APPELLANT'S ATTORNEY]:—having me to object to such a question.

[PROSECUTOR]: Your Honor, she testified repeatedly to the fact that he was not trying to hurt anybody, that he didn't do anything to hurt anybody that day.

THE COURT: I overrule the objection.

[APPELLANT'S ATTORNEY]: Subject to that, we object to his question and answer and ask that it be stricken and the jury instructed not to consider it for any purpose upon the grounds it's an attempt to inject the character of [Appellant].

THE COURT: All right. I overrule the objection. Go ahead.

■ Asking an improper question does not constitute reversible error unless there is obvious harm to the defendant. *Yarbrough v. State,* 617 S.W.2d 221, 228 (Tex.Crim.App. [Panel Op.] 1981). Furthermore, any error caused by an improper question will generally be cured by an instruction to disregard. *Brown v. State,* 692 S.W.2d 497, 501 (Tex.Crim.App.1985). Merely asking an improper question will require a reversal only when the question alone is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing its impression on the jury. *Id.* Based on the record as a whole, none of the questions above were clearly calculated to inflame the minds of the jury, were of such a character as to suggest the impossibility of

withdrawing their impression upon the jury, or were obviously harmful to Appellant.

■ Moreover, Appellant failed to preserve any complaint when he did not follow the proper procedure of obtaining an adverse ruling by first objecting, then asking for a curative instruction, and finally moving for a mistrial. *See Sawyers v. State,* 724 S.W.2d 24, 38 (Tex.Crim.App.1986). Furthermore, these points are not supported by any authority. *See* Tex.R.App.P. 74(f). Points two through five are overruled.

■ Point twelve is that allowing the State to cross-examine Traylor violated Appellant's spousal privilege. Rule 504 of the Rules of Criminal evidence provides: "A spouse who testifies on behalf of the accused is subject to cross-examination as provided in Rule 610(b)." Tex.R.Crim.Evid. 504(2)(a). Rule 610(b) extends the scope of cross-examination to "any matter relevant to any issue in the case, including credibility." *Id.* at 610(b). Point twelve is overruled because Appellant cannot claim the spousal privilege after calling Traylor to testify on his behalf.

■ In points thirteen through fifteen, Appellant complains that the court erred when it admitted testimony and exhibits describing and depicting the injuries which Officer Whitt sustained as a result of a collision during Appellant's apprehension. Whether to admit evidence is a question for the trial judge, and his decision will not be disturbed on appeal except for an abuse of discretion. *Crank v. State,* 761 S.W.2d 328, 342 (Tex.Crim.App.1988). Although a defendant should not be punished for a collateral crime or for being a criminal generally, the facts and circumstances surrounding the commission of the offense can be considered by the jury. *Lomas v. State,* 707 S.W.2d 566, 568 (Tex.Crim.App.1986). Events do not occur in a vacuum and, even though prejudicial, evidence explaining the context of an offense is usually admissible. *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim.App.1986). If the evidence concerns a continuous transaction or another offense

which is part of the case on trial, or closely interwoven with it, the evidence is admissible to show the context of the offense. *Taylor v. State*, 420 S.W.2d 601, 605 (Tex. Crim.App.1967).

■ The collision and Whitt's injuries resulted from Appellant's attempt to evade arrest. The actions occurring between the traffic stop and the arrest involved a continuous transaction, the facts and circumstances of which were so interrelated that they were admissible to show the context of the offense charged. The court did not abuse its discretion when it admitted the testimony and exhibits. Points thirteen through fifteen are overruled.

During the prosecutor's cross-examination of Traylor, the following occurred:

Q And who put you in that position, Miss Traylor? This [Appellant] right here.

*Are you staring me down, buddy?* Just try.

THE COURT: All right. Let's go.

[APPELLANT'S ATTORNEY]: Now we move the Court for a mistrial.

THE COURT: I overrule the motion for mistrial. I instruct the jury they will disregard the last statement of counsel.

[APPELLANT'S ATTORNEY]: It's so prejudicial to [Appellant] that it cannot be cured.

THE COURT: All right. I overrule the motion for mistrial. I instruct the jury that they will disregard the last statement of counsel for the State for any purpose whatsoever.

(Emphasis added). Appellant's sixteenth point is that the court erred when it denied his motion for a mistrial.

■ Clearly, the prosecutor's comment apparently directed to Appellant— "Are you staring me down, buddy?"—was improper. The question, however, is whether it resulted in reversible error. When the court instructed the jury to disregard the statement, the error was cured because the statement was not of such a nature as to irrevocably prejudice the jury. *See Jackson v. State*, 536 S.W.2d 371, 372 (Tex.Crim.App.1976). Furthermore, assuming that the instruction did not cure the

error, based on the overwhelming evidence of Appellant's guilt and considering the aggravating circumstances connected with the offense, the statement did not contribute to Appellant's conviction or punishment beyond a reasonable doubt. *See* TEX. R.APP.P. 81(b)(2). Point sixteen is overruled.

Appellant contends in points seventeen and eighteen that the court erred when it denied a motion for a mistrial and overruled an objection to the prosecutor's argument. Specifically, he complains that the following argument informed the jury that the offense of reckless conduct had a minimal punishment:

[PROSECUTOR]: What I am telling you and asking you to do, ladies and gentlemen, if you can't find him guilty of aggravated assault on the evidence we presented to you, then you walk him out of the courthouse and you can take him to lunch for all I care. Because the offense of reckless conduct is a *Mickey Mouse offense.*

[APPELLANT'S ATTORNEY]: At this time we move the Court to declare a mistrial upon the grounds counsel has made this last statement so improper and prejudicial no instruction any Court could give would remove its improper prejudicial effect.

THE COURT: I sustain the objection to the extent that I instruct the jury that they will disregard the last statement of counsel for the State as to whether or not it's a *Mickey Mouse offense.* I instruct you that you will disregard that statement. I overruled the motion for mistrial at this time.

[PROSECUTOR]: It is a less serious crime, and we are not interested—

[APPELLANT'S ATTORNEY]: We object to that statement, Your Honor. This is District Court, and this charge relates to an offense in this Court. We object to it.

THE COURT: I overrule that objection.

(Emphasis added).

■ The state has wide latitude in argument, and error does not result unless the argument is extreme, manifestly im-

proper, or injects new and harmful facts. *Denison v. State,* 651 S.W.2d 754, 761–62 (Tex.Crim.App.1983). The prosecutor was explaining the law contained in the charge to the jury.[1] *See Wilder v. State,* 583 S.W.2d 349, 362 (Tex.Crim.App.1979). Furthermore, when the court instructed the jury to disregard the statement that the lesser-included crime was a "Mickey Mouse offense," any error was cured. *See Johnson v. State,* 583 S.W.2d 399, 408 (Tex. Crim.App. [Panel Op.] 1979). Assuming, however, that the instruction did not cure any error, viewing the record as a whole, the statement was not extreme, manifestly improper, and did not inject new and harmful facts. *See Denison,* 651 S.W.2d at 761–62. Points seventeen and eighteen are overruled.

Points nineteen through twenty-one are that the prosecutor's argument was improper. Specifically, Appellant complains about the following:

> There are two offenses listed in this Court's Charge. There is aggravated assault and reckless conduct. First thing you consider is the aggravated assault. You don't even think about the second part of the charge, about reckless conduct, until all 12 of you say that he is not guilty of aggravated assault.
>
> [APPELLANT'S ATTORNEY]: We object to that as contrary to the law. If the Court—this charge is given as a whole, and the jury should consider this entire charge. It's highly prejudicial.
>
> THE COURT: I overrule the objection. The jury will have the Court's Charge.
>
> [APPELLANT'S ATTORNEY]: Move the Court to instruct the jury not to consider his statement.
>
> THE COURT: I overrule your request.
>
> [PROSECUTOR]: I have correctly stated the law, ladies and gentlemen. You first consider aggravated assault. And only if you all 12 of you say he is not guilty of aggravated assault then do you consider his reckless conduct.
>
> [APPELLANT'S ATTORNEY]: Object again. Move the Court to instruct the jury not to consider it—

> THE COURT: I overrule.
>
> [APPELLANT'S ATTORNEY]: —denies right to consider this entire charge.
>
> THE COURT: Overrule the objection. The jury has the Court's Charge, and they will follow the instructions as set out in the Court's Charge.
>
> [PROSECUTOR]: Now then, very important. When you get to Page Five, if you think he is not guilty of aggravated assault, then just forget about the rest of it and don't even think about reckless conduct.
>
> [APPELLANT'S ATTORNEY]: We object to counsel telling the jury not to read the Court's entire charge as they are instructed to do and should consider the entire charge. This is prejudicial.

■■■ Assuming that the argument was improper, any error was cured when the court instructed the jury to consider the entire charge. *See Johnson,* 583 S.W.2d at 408. Furthermore, any error was harmless because the jury found Appellant guilty of aggravated assault, and the argument did not contribute to his conviction beyond a reasonable doubt. *See* Tex.R.App.P. 81(b)(2). We overruled points nineteen, twenty, and twenty-one.

■■■ The court submitted verdict forms for the jury to find Appellant guilty of aggravated assault, or guilty of reckless conduct, or not guilty. Appellant argues in point one that the court erred when it failed to submit a form for finding Appellant not guilty of aggravated assault.

The court should submit to the jury forms for every verdict authorized by the main charge. *Clepper v. State,* 162 Tex. Crim. 278, 284 S.W.2d 739, 740 (1955). Here, the court did just that; it submitted forms for finding Appellant guilty of aggravated assault, guilty of reckless conduct, i.e., not guilty of aggravated assault, or not guilty of either offense. Had the jury found Appellant guilty of reckless conduct, a lesser-included offense, their verdict necessarily would have acquitted him of

---

1. The charge instructed the jury, "Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit [Ap-

pellant] of aggravated assault, and next consider the *lesser offense* of reckless conduct." (Emphasis added).

aggravated assault. *See Ex parte Gutierrez*, 600 S.W.2d 933, 935 (Tex.Crim.App. 1980). Use of the verdict form to find him "not guilty" would have acquitted Appellant of aggravated assault and reckless conduct. Furthermore, because the jury found Appellant guilty of aggravated assault, we determine beyond a reasonable doubt that any error in the forms submitted to the jury did not contribute to his conviction. *See* TEX.R.APP.P. 81(b)(2). Point one is overruled.

In points six through nine, Appellant argues that the court erred when it overruled his objections to the charge, which did not contain limiting instructions. He contends the court should have instructed the jury not to consider evidence that he resisted arrest and fired shots at Officers LaRue and Koen unless they found beyond a reasonable doubt that he committed those extraneous acts. As already noted, however, the events between the traffic stop and Appellant's arrest constituted one criminal transaction. Points six through nine are overruled because no limiting instruction was required. *See Hoffert v. State*, 623 S.W.2d 141, 145 (Tex.Crim.App. [Panel Op.] 1981).

Appellant complains in points ten and eleven that the court erred when it failed to limit the jury's consideration of evidence that the gun used by Appellant was capable of holding more shells than permitted by law and that police had a warrant for his arrest. Clearly, evidence that there was a warrant for Appellant's arrest was not evidence of an extraneous offense because, when Appellant was informed about the warrant, he initiated the criminal transaction which resulted in the aggravated assault, i.e., he fled from the officers. Likewise, evidence relating to the weapon which Appellant used to shoot at officers was admissible to show the context of the aggravated assault. Points ten and eleven are overruled because no limiting instruction was required. *See id.*

Appellant was indicted for "intentionally and knowingly [threatening a peace officer] JACKY A. WALLACE with imminent bodily injury and [using] a deadly weapon, to-wit: a firearm." The court defined deadly weapon in its charge during the guilt-innocence phase. Furthermore, the court instructed the jury to find Appellant guilty if they determined that he "intentionally and knowingly threaten[ed] Jacky A. Wallace with imminent bodily injury and [used] a deadly weapon, to-wit: a firearm." Point twenty-seven is that the court erred when it entered a deadly weapon finding in the judgment because the jury had failed to make an affirmative deadly weapon finding.

This point is overruled because the jury effectively made an affirmative deadly weapon finding when it found that Appellant was guilty "as alleged in the indictment." *See Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985).

Appellant complains in points twenty-three and twenty-four about the court's allowing unadjudicated and specific acts of misconduct to be introduced into evidence during the punishment phase over his objection. The State contends the evidence was admissible under article 37.07, § 3(a), which provides: "[E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing*, including the prior criminal record of the defendant, his general reputation and his character." *See* TEX.CODE CRIM. PROC.ANN. art. 37.07, § 3(a) (Vernon Supp. 1991) (emphasis added).

Article 37.071(a), which governs the admissibility of evidence on punishment in capital trials, provides: "In the [capital] proceeding, evidence may be presented as to any matter *that the court deems relevant to sentence*." *Id.* at art. 37.071(a) (Vernon Supp.1991) (emphasis added). Unadjudicated and specific acts of misconduct, if the court deems them relevant to sentencing, are admissible in capital cases. *McCoy v. State*, 713 S.W.2d 940, 954 (Tex. Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

When the legislature amended article 37.07, § 3(a) to include the phrase "any matter the court deems relevant to sentencing"—which is similar to the phrase in article

37.071(a)—did it intend to make unadjudicated acts of misconduct admissible in non-capital trials? Several appellate courts have answered this question affirmatively.[2]

■ However, writing the majority opinion for a divided Dallas court of appeals, Judge John Onion[3] examined the legislative history and intent behind the amendment to article 37.07, § 3(a) and concluded that the legislature did not intend to make unadjudicated offenses and their details admissible in non-capital trials. *Grunsfeld v. State*, 813 S.W.2d 158, 171 (Tex.App.—Dallas 1991, no pet.). After examining both sides of the issue, we find Judge Onion's analysis more persuasive because it harmonizes and gives effect to all provisions of the statute. Thus, we agree with and adopt the holding in *Grunsfeld* and apply it here. Accordingly, we sustain points twenty-three and twenty-four. Other points relating to alleged errors during the punishment hearing are not reached.

Having found no error affecting guilt-innocence but concluding that the court erred during the punishment phase by admitting evidence of unadjudicated acts of misconduct, we reverse the judgment and remand the cause for a new punishment hearing under article 44.29(b). *See* Tex. Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp.1991).

CUMMINGS, J., not participating.

### OPINION ON REHEARING

THOMAS, Chief Justice.

On October 9, 1991, holding that unadjudicated offenses and their details are not admissible in non-capital trials, we reversed the judgment and remanded the cause for a new punishment hearing. The State complains on rehearing that we failed to do a harm analysis. *See* Tex.R.App.P. 81(b)(2).

Appellant was indicted for agravated assault, enhanced by two prior felonies. Thus, the second-degree felony was enhanced to a first degree felony punishable by "life or for any term of not more than 99 years or less than 5 years." *See* Tex.Penal Code Ann. §§ 12.32–33 (Vernon Supp. 1991 and Vernon 1974). The jury assessed Appellant's punishment at life in prison.

■ During the punishment phase, evidence concerning the following extraneous unadjudicated offenses was admitted: (1) Appellant's confession that he stole tools from his grandfather, his aunt's radar detector, his grandfather's wallet, his aunt's purse, and a shotgun, a quilt, two watches and two lamps from a house; and (2) testimony revealing that Appellant, while attempting to escape from jail, drove a truck at a high rate of speed towards officers who were trying to apprehend him and then evaded officers after a high-speed chase. Based on the record as a whole, we cannot determine beyond a reasonable doubt that the admission of these unadjudicated offenses at the punishment phase did not contribute to Appellant's life sentence. *See* Tex.R.App.P. 80(b)(2).

Accordingly, we deny the State's motion for a rehearing. Appellant's motion for a rehearing is likewise denied.

CUMMINGS, J., not participating.

---

**2.** *See, e.g., Gallardo v. State,* 809 S.W.2d 540 (Tex.App.—San Antonio 1991, pet. granted); *McMillian v. State,* 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State,* 795 S.W.2d 909 (Tex.App.—Beaumont 1990, pet. ref'd).

**3.** Former presiding judge of the Texas Court of Criminal Appeals, sitting by assignment with the Dallas Court of Appeals.